DANIEL J. MULLIGAN, SBN 103129
JENKINS MULLIGAN & GABRIEL LLP
10085 Carroll Canyon Road, Ste. 210
San Diego, CA 92131
Telephone:    (415) 982-8500
Facsimile:     (415) 982-8515
Email:          dan@jmglawoffices.com

Attorneys for Plaintiffs ANTONIO AND
BEATRIZ ESQUIVEL; and the putative class.

*Additional Counsel Listed on Signature Page*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| ANTONIO ESQUIVEL AND BEATRIZ ESQUIVEL, individually, on behalf of all others similarly situated, and on behalf of the general public<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A; BANK OF AMERICA CORPORATION; and DOES 1 through 100 inclusive,<br><br>Defendants. | Case No. 12-CV-2502-GEB-KJN<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS**<br><br>Date:   January 22, 2013<br>Time:  9:00 a.m.<br>Judge: Hon. Garland E. Burrell, Jr.<br>Dept.:  Courtroom 10, 13th Floor |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

II.  FACTUAL BACKGROUND ................................................................................ 2

III. STANDARD OF REVIEW ................................................................................ 4

   A. PLAINTIFFS STATE A CLAIM UNDER THE CCRAA BECAUSE THE FCRA
      DOES NOT PREEMPT THE CCRAA CLAIM MADE HERE, AND BECAUSE
      CCRAA ALLOWS FOR PRIVATE ACTIONS AGAINST A FURNISHER OF
      INFORMATION. ................................................................................ 4

   B. PLAINTIFFS STATE A CLAIM FOR BREACH OF CONTRACT AND
      SUFFICIENTLY PLEAD CONTRACT DAMAGES ........................................ 6

   C. PLAINTIFFS  STATE A CLAIM FOR PROMISSORY ESTOPPEL .............................. 8

   D. PLAINTIFFS HAVE STANDING UNDER THE UCL BECAUSE PLAINTIFFS
      HAVE SUFFERED INJURY-IN-FACT AS A RESULT OF BANK OF
      AMERICA'S ACTIONS ..................................................................... 9

   E. PLAINTIFFS STATE UNFAIR DEBT COLLECTION CLAIMS UNDER BOTH
      CALIFORNIA'S ROSENTHAL ACT AND THE FEDERAL FAIR DEBT
      COLLECTION PRACTICES ACT ("FDCPA") .......................................... 11

      1. PLAINTIFFS' FEDERAL FAIR DEBT COLLECTION PRACTICES ACT
         ("FDCPA") CLAIM (FOURTH CAUSE OF ACTION) IS VALID BECAUSE
         THE ESQUIVELS' MORTGAGE LOAN IS A "DEBT" AND BANK OF
         AMERICA IS A "DEBT COLLECTOR" UNDER THE FDCPA ........................... 13

         a. Mortgage Servicers Are Subject to the FDCPA ................................... 13

         b. Bank of America Is A "Debt Collector" Under the FDCPA Because It Obtained
           the Servicing Rights to Plaintiffs' Mortgage *After* Plaintiffs Defaulted ............... 15

         c. Plaintiffs' Mortgage Is A "Debt" Under the FDCPA ............................. 15

      2. CALIFORNIA'S  ROSENTHAL FAIR DEBT COLLECTION PRACTICES
         ACT ("ROSENTHAL ACT") CLAIM APPLIES TO MORTGAGE SERVICERS
         AND MORTGAGE DEBT ...................................................................... 16

V.  CONCLUSION ................................................................................ 20

# TABLE OF AUTHORITIES

Page

**Cases**

*Aceves v. U.S. Bank, N.A.,*
   192 Cal. App. 4th 218, 227 (2011)..................................................................9

*Alkan v. Citimortgage, Inc.,*
   336 F.Supp.2d 1061, 1064 (N.D. Cal.2004) .................................................11

*Armstrong Petroleum Corp. v. Tri Valley Oil & Gas Co.,*
   116 Cal.App.4th 1375, 139 (2004).................................................................7

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937, 1949 (2009) ........................................................................4

*Azzini v. Countrywide Home Loans,*
   2010 U.S. Dist. LEXIS 24572, 2010 WL 962856, (S.D. Cal. March 15, 2010).................12, 19

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544, 555-56 (2007)..........................................................................4

*Birster v. American Home Mortgage Servicing, Inc.,*
   11th Cir. Dec. 21, 2011 .................................................................................13

*Bridge v. Ocwen Fed. Bank, FSB,*
   681 F.3d 355, 359 (6th Cir. 2012).................................................................11

*Bush v. Loanstar Mortgagee Servs.,*
   286 F.Supp.2d 1210, 1213 (N.D.Cal. 2003) .................................................16

*Carvalho v. Equifax Info. Servs.*, LLC,
   629 F.3d 876, 888 (9th Cir. Cal. 2010) ...........................................................5

*Castaneda v. Saxon Mortg. Services, Inc.,*
   687 F. Supp. 2d 1191 (E.D. Cal. 2009) .........................................................19

*Champlaie v. BAC Home Loans Servicing, LP,*
   706 F.Supp.2d 1029, 1054-55 (E.D. Cal. 2009)............................................11

*Colvig v. RKO General, Inc.,*
   232 Cal. App. 2d 56, 68-69 (1965)..................................................................7

*Day v. American Home Mortgage Servicing,*
   2010 U.S. Dist. LEXIS 63033, (E.D. Cal. 2010) ..........................................17

*Division of Labor Law Enforcement v. Transpacific Transportation Co.*,
   69 Cal. App. 3d 268, 276 (1977).....................................................................8

*Fanucchi & Limi Farms v. United Agri Prods.,*
   414 F.3d 1075, 1082 (9th Cir. 2005)................................................................7

*Ford Motor Credit Co. v. Milhollin,*
   444 U.S. 555. 566 (1980) ..............................................................................13

- ii -

*Garcia v. World-Sav., FSB,*
   183 Cal. App. 4th 1037, 1040-41 (2010) (*citing Youngman v. Nev. Irrigation Dist.*, 70 Cal. 2d
   240, 249 (1969)) ..................................................................................................................... 8

*Gardner v. American Home Mortgage Servicing, Inc.,*
   691 F. Supp. 2d 1192 (E.D. Cal. 2010) ................................................................................. 19

*Gburek v. Litton Loan Servicing LP,*
   614 F.3d 380 (7th Cir. 2010) ................................................................................................. 11

*Gilligan v. Jamco Dev. Corp.,*
   108 F.3d 246 (9th Cir. 1997) ................................................................................................... 4

*Glendale Fed. Sav. & Loan Ass'n v. Marina View Heights Dev. Co.,*
   66 Cal. App. 3d 101 (1977) ..................................................................................................... 7

*Gorman v. Wolpoff & Abramson, LLP,*
   584 F.3d 1147 (9th Cir. 2009) ............................................................................................ 5, 6

*Gumbs v. Litton Loan Servicing,*
   2010 U.S. Dist. LEXIS 47890 (E.D.Cal. May 13, 2010) ................................................. 12, 19

*Hamilton v. U.S. Bank, N.A.,*
   2011 U.S. Dist LEXIS 88140 (S.D. Cal. August 8, 2011) ..................................................... 16

*Hulse v. Ocwen Federal Bank, FSB,*
   195 F.Supp.2d 1188, 1204 (D. Or. 2002) .............................................................................. 16

*In re JPMorgan Chase Mortgage Modification Litigation,*
   2012 U.S. Dist. LEXIS 104486, (D. Mass. July 27, 2012) .................................................... 11

*Ines v. Countrywide Home Loans, Inc.,*
   2008 U.S. Dist. LEXIS 88739 (S.D. Cal. 2008) ............................................................... 12, 18

*Izenberg v. ETS Services, LLC,*
   589 F. Supp. 2d 1193, (C.D. Cal. 2008) ............................................................................... 12

*Kasky v. Nike, Inc.,*
   27 Cal.4th 939, 949 (2002) ...................................................................................................... 9

*Krouse v. BAC Home Loans Servicing, LP,*
   2011 U.S. Dist. LEXIS 140044 (E.D. Cal. Dec. 5, 2011) ......................................................... 8

*Kwikset Corp. v. Superior Court,*
   51 Cal. 4th 310, 322 (2011) ................................................................................................... 10

*Lin v. Universal Card Servs. Corp.,*
   238 F. Supp. 2d 1147, 1152-53 (N.D. Cal. 2002) ................................................................... 5

*Makaeff v. Trump University,*
   2011 WL 1872654 (S.D. Cal. 2011) (*citing Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226,
   1239 (1995)) ............................................................................................................................ 8

- iii -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Morgera v. Countrywide Home Loans, Inc.*
  2010 U.S. Dist. LEXIS 2037 (E.D. Cal. Jan. 12, 2010) ................................................... 18, 19

*Myers v. Stephens*,
  233 Cal. App. 2d 104, 120 (1965) ................................................................................. 7

*Nool v. Homeq Servicing*,
  653 F.Supp.2d 1047 (E.D. Cal. 2009) ........................................................................ 17

*Osei v. Countrywide Home Loans*,
  692 F.Supp.2d 1240, 1248 (E.D. Cal. 2010) ............................................................. 11

*Penny v. NDeX West LLC*,
  2012 U.S. Dist. LEXIS 22070 (C.D. Cal. Feb. 22, 2012) ......................................... 17

*Pfeiffer v. Countrywide Home Loans*,
  2012 Cal.App. LEXIS 1265 (December 13, 2012) .................................................... 13

*Pittman v. Barclays Capital Real Estate, Inc.*,
  U.S. Dist. LEXIS 34885, 3 (S.D. Cal. April 24, 2009**)** ....................................... 18

*Pulver v. Avco Fin. Serv.*,
  182 Cal. App. 3d 622, 633 (1986) ............................................................................... 5

*Reyes v. Wells Fargo Bank, N.A.*
  2011 U.S. Dist. LEXIS 2235 (N.D. Cal. Jan. 3, 2011) ........................................ 17, 19

*Shapiro & Meinhold v. Zartman*,
  823 P.2d 120, 124 (S.Ct. Colo. 1992) ....................................................................... 16

*Slenk v. Transworld Sys.*,
  236 F.3d 1072, 1075 (9th Cir. 2001) ......................................................................... 16

*Vanduzen v. Homecomings Financial*,
  2010 U.S. Dist. LEXIS 46106 (E.D. Cal. 2010) ....................................................... 17

*Walker v. Equity 1 Lenders Group*,
  No. 09cv325 WQH (AJB), 2009 WL 1364430 (S.D. Cal. May 14, 2009) .............. 12

*Walters v. Fidelity Mortgage of California, Inc.*,
  730 F.Supp.2d 1185 (E.D. Cal. 2010) ....................................................................... 17

*West Shield Investigations and Security Consultants v. Superior Court*,
  82 Cal. App. 4th 935, 957 (2000) ............................................................................... 8

*Wilcox v. EMC Mortg. Corp.*,
  2011 U.S. Dist. LEXIS 82128 (C.D. Cal. July 25, 2011) ........................................... 8

*Wilson v. Draper & Goldberg, P.L.L.C.*,
  443 F.3d 373 (4th Cir. 2006) ..................................................................................... 16

*Zhuravlev v. BAC Home Loans Servicing, LP*,
  2010 U.S. Dist. LEXIS 73874 (N.D. Cal. July 20, 2010) ......................................... 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Statutes**

12 United States Code Section 5481(12)(H) ................................................................. 13

12 United States Code Section 5512(b)(1) ................................................................... 13

12 United States Code Section 5581(b)(5) ................................................................... 13

15 United States Code Section 1681t(b)(1)(F) ............................................................... 5

15 United States Code Section 1692 .................................................................... 13, 19

15 United States Code Section 1692a(4) ..................................................................... 14

15 United States Code Section 1692a(5) ..................................................................... 16

15 United States Code Section 1692a(6) .............................................................. 13, 17

15 United States Code Section 1692a(6)(f) .......................................................... 14, 17

15 United States Code Section 1692a(6)(f)(iii) ........................................................... 14

15 United States Code Section 1692l ......................................................................... 13

California Business and Professions Code Section 17200 ............................................ 9

California Civil Code Section 1785.25(a) ................................................................. 4, 5

California Civil Code Section 1785.25(g) ..................................................................... 5

California Civil Code Section 1785.31 ...................................................................... 4, 5

California Civil Code Section 1788.17 ....................................................................... 17

California Civil Code Section 1788.2 ......................................................................... 16

California Civil Code Section 1788.2(c) ..................................................................... 17

**Other Authorities**

Rosenthal Fair Debt Collection Practices Act, Civil Code Section 1788 ..................... 16

**Rules**

Federal Rules of Civil Procedure 8(a)(2) ................................................................ 4, 7

Federal Rule of Civil Procedure 12(b)(6) ................................................................... 4

Federal Rule of Civil Procedure 15(a)(2) ................................................................. 15

1  **I.        INTRODUCTION AND SUMMARY OF ARGUMENT**

2          The Complaint here is rather straightforward.  It alleges that Plaintiffs, Beatriz and

3  Antonio Esquivel, senior citizens, agreed to accept a $93,000 lien and subordinate note on their

4  property in exchange for a permanent modification of the original note to a lower, affordable

5  payment.  Despite the fact that it was completely involved in the modification, Defendant Bank of

6  America failed to honor the new agreement and continued to attempt to collect the original

7  monthly amounts owed, by reporting the loan as in default to the credit reporting bureaus, and

8  initiating foreclosure proceedings despite the fact that the Bank of America had already imposed

9  the new $93,000 obligation on the Esquivels' home.

10          The Esquivels bring claims on behalf of themselves and others similarly situated to

11  redress Bank of America's wrongful actions.  In its motion to dismiss, Bank of America presents

12  frivolous and meritless arguments claiming that Plaintiffs have no recourse against Bank of

13  America for its misconduct under any of the causes of action.  Bank of America is wrong.

14          Bank of America first argues that Plaintiffs' California Consumer Credit Reporting

15  Agencies Act ("CCRAA") claim is preempted or cannot be brought against Bank of America as a

16  furnisher of information; this argument is in stark contradiction to controlling Ninth Circuit

17  precedent.  Ignoring this controlling law, Bank of America instead cites to a California appellate

18  court case decided some seven years before the CCRAA was amended to specifically include

19  furnishers of information, such as Bank of America, as responsible parties under the statute.

20          Bank of America also argues that Plaintiffs failed to sufficiently plead Bank of America's

21  breach or what damages resulted therefrom despite the litany of ways in which Plaintiffs describe

22  Bank of America's failure to honor the new agreement -- including by failing to honor the new

23  payment amount, the new principal amount, and initiating foreclosure proceedings even though

24  Plaintiffs performed as requested under the new agreement.  Plaintiffs also describe the damage

25  that occurred from Bank of America's breach of the new agreement to include, *inter alia*,

26  imposition of a $93,000 lien and subordinate note on their residence.

27  ///

28  ///

Bank of America further argues Plaintiffs' promissory estoppel claim fails even though Plaintiffs allege they reasonably relied on Bank of America's clear promise that it would provide Plaintiffs with a permanent modification if Plaintiffs agreed to imposition of the new $93,000 obligation.   Bank of America claims, as above, Plaintiffs failed to allege damage despite imposition of the $93,000 obligation. This is wrong as a matter of law.

Undeterred, Bank of America claims imposition of the $93,000 obligation without honoring the new agreement is also insufficient to confer standing for purposes of California's Unfair Competition Law ("UCL").   These arguments are frivolous and must be rejected. The UCL calls for actual damages, which Plaintiffs clearly allege.

Bank of America finally argues that mortgage servicers and mortgages are not subject to the federal or state Unfair Debt Collection Practices Acts.  But the law is clear that mortgage servicers and mortgages *can* be subject to the acts.  Indeed, in this case, Bank of America *is* subject to both acts because Bank of America engaged in collection activities on a mortgage acquired after default.  Moreover, Bank of America violated both acts by attempting to collect amounts not owed under the new agreement and by misrepresenting the mortgage as in default when it was current under the new agreement.

As more full described below, Bank of America's motion to dismiss should be denied in its entirety.

## II.        FACTUAL BACKGROUND

Beatriz and Antonio Esquivel, who are senior citizens, bought their home at 430 La Esperanza Drive in Dixon, California in 2001.  Compl. ¶¶ 12-13.  In 2009, they refinanced and received a loan of $322,975, which was insured by the Federal Housing Administration ("FHA"). *Id.* at ¶ 13.  The Esquivels fell behind on their mortgage payments.  *Id.* at ¶ 15.  The Esquivels then applied for a mortgage modification with Bank of America in August, 2011.  *Id.*

On September 12, 2011, Bank of America offered the Esquivels a trial mortgage modification to run from October to December 2011, which required monthly trial period plan payments of $1,509.52.  *Id.* at ¶ 16.  The Esquivels timely made the modified monthly payments and continued to do so in January and February 2012.  *Id.*

- 2 -

In mid-February 2012, Bank of America offered the Esquivels a permanent "FHA HAMP" mortgage modification. *Id.* at ¶ 17. In the Modification Agreement, which stated that it was effective as of February 1, 2012, the unpaid balance on the Note was reduced to $226,755.02 and the monthly payment due was lowered to $1,515.96. *Id.* As a part of the Modification Agreement, the Esquivels had to sign a Subordinate Note under which they promised to pay the Department of Housing and Urban Development ("HUD") $93,591.63, the amount of the principal reduction, under certain conditions. *Id.* at ¶ 18.

The Esquivels accepted Bank of America's offer of an FHA HAMP permanent loan modification by signing and notarizing the Modification Agreement, the Subordinate Note, and the Deed of Trust on February 25, 2012, returning the signed documents to Bank of America, and making payments under the modified mortgage. *Id.* at ¶ 20. The Deed of Trust to HUD was recorded in the Solano County Recorder's Office on June 5, 2012. *Id.* at ¶ 22.

Despite the Esquivels' timely payments on their modified loan and Bank of America's recordation of the partial claim Deed of Trust, Bank of America has continued to treat the loan as if it were in default under the terms of the original, unmodified, note. *Id.* at ¶ 23.

The Esquivels' June 2012 mortgage statement stated that the Esquivels were over $10,000 in arrears on their loan. *Id.* at ¶ 24. In July 2012, Bank of America sent them a letter stating that the modified amount that they had been paying was insufficient to cover the full payment due of $2,088.43, and returning the claimed partial payment to them. *Id.* Bank of America has since refused to accept further payments on the loan. *Id.* Rather than bringing the Esquivels' loan current as required by the Modification Agreement, Bank of America has encumbered the Esquivels' property with a lien of over $93,000, while continuing to attempt collect on the old unmodified loan. *Id.* at ¶ 25.

In addition, Bank of America reported to the three major credit reporting agencies that the Esquivels were late on their mortgage payments, rather than reporting the true fact that they were making payments as agreed. *Id.* at ¶ 27. Finally, Bank of America started foreclosure proceedings by recording a Notice of Default against the property on August 2, 2012. *Id.* at ¶ 28.

- 3 -

III.    STANDARD OF REVIEW

The standards on a motion to dismiss are well established.  Motions to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure are viewed with disfavor and, accordingly, dismissals for failure to state a claim are "rarely granted." *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).  The sole question before the Court is whether Plaintiffs' Complaint alleges facts that support a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss under Federal Rules of Civil Procedure, Rule 12(b)(6), a complaint need not provide detailed factual allegations. *Twombly.* at 555-56; *see* Fed. R. Civ. P. 8(a)(2) (requiring only a "short and plain statement of the claim").  A complaint must proffer only "enough facts to state a claim to relief that is plausible on its face." *Twombly* at 570.  Courts must construe the complaint in the light most favorable to the plaintiff, accepting all well-pled factual allegations as true, and drawing all reasonable inferences in plaintiff's favor. *Id.* at 556;  *Iqbal* at 1949.

IV.    ARGUMENT

**A.    PLAINTIFFS STATE A CLAIM UNDER THE CCRAA BECAUSE THE FCRA DOES NOT PREEMPT THE CCRAA CLAIM MADE HERE, AND BECAUSE CCRAA ALLOWS FOR PRIVATE ACTIONS AGAINST A FURNISHER OF INFORMATION.**

To argue for dismissal of Plaintiffs' Consumer Credit Reporting Agencies Act ("CCRAA") claim, Bank of America advances an argument that has been squarely rejected in the Ninth Circuit.  The applicable statute, California Civil Code section 1785.25(a) provides: "[a] person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."  The private right to enforce section 1785.25(a) is found in section 1785.31, which provides that "[a]ny consumer who suffers damages as a result of a violation of this title by any person may bring an action" to recover damages.  Cal. Civ. Code §§ 1785.25(a), 1785.31.

///

///

- 4 -

Bank of America argues that CCRAA section 1785.31 is preempted or does not extend to furnishers and, therefore, Plaintiffs cannot maintain a private action under CCRAA section 1785.25(a) against Bank of America as a furnisher.  (Mtn. at 8).  In previously rejecting this very same argument, the Ninth Circuit explained:

> Because the private right of action to enforce section 1785.25(a) is found in sections 1785.25(g) and 1785.31, which are not expressly saved from preemption under the FCRA, some courts have held that FCRA preempts private consumer actions against furnishers under California law. *See, e.g., Lin v. Universal Card Servs. Corp.*, 238 F. Supp. 2d 1147, 1152-53 (N.D. Cal. 2002)). However, we recently rejected this view in *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009). There, we concluded that the provisions creating a private right of action do not constitute a "requirement or prohibition" within the meaning of 15 U.S.C. § 1681t(b)(1)(F) because they merely provide a vehicle for enforcing actual requirements or prohibitions. *Id.* at 1170-71. Moreover, we concluded that it was highly unlikely that Congress "explicitly retained the portions of the California statutory scheme that create obligations, without leaving in place any enforcement mechanism." *Id.* at 1170. Therefore, we held that "the private right of action to enforce California Civil Code section 1785.25(a) is not preempted by the FCRA." *Id.* at 1173.

*Carvalho v. Equifax Info. Servs.*, LLC, 629 F.3d 876, 888 (9th Cir. Cal. 2010).

Thus, binding Ninth Circuit authority rejects Defendant's argument.

Defendant's argument regarding furnishers is simply wrong. To support its argument that the CCRAA does not permit claims against furnishers, Bank of America cites two district court cases which, in turn, rely on a California appellate case, *Pulver v. Avco Fin. Serv.*, 182 Cal. App. 3d 622, 633 (1986).  (Mtn. at 8, 9).  Bank of America's reliance on *Pulver* is misplaced.  In *Pulver*, the court held that the CCRAA's Section 1785.31 did not apply to furnishers because the *federal* Fair Credit Reporting Act did not apply to furnishers, and the CCRAA's purpose had been to regulate consumer credit reporting agencies rather than those who furnish information to such agencies. *Pulver*, 182 Cal. App. 3d at 633-635.  The *Pulver* court's decision, however, came in 1986, reviewing a prior version of the CCRAA that did not include Section 1785.25(a).  The California legislature amended the CCRAA effective July 1, 1993 to include, *inter alia*, Section

- 5 -

1785.25 entitled "Obligations of Furnishers of Credit Information."  *See* Cal. Civ. Code  1785.25.

The FCRA, in turn, was amended in 1996 to exempt Section 1785.25(a) from preemption.   *See*

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1172 (9th Cir. Cal. 2009).  By the plain

language of the current statute, the CCRAA applies to furnishers like Bank of America.

Because controlling Ninth Circuit law, which Bank of America failed to acknowledge or

cite, provides that the CCRAA is not preempted and applies to furnishers, Bank of America's

argument to the contrary is frivolous and wholly without merit.

### B.    PLAINTIFFS STATE A CLAIM FOR BREACH OF CONTRACT AND SUFFICIENTLY PLEAD CONTRACT DAMAGES

Bank of America also argues that Plaintiffs breach of contract claim must fail because

Plaintiffs did not identify what specific contractual language Bank of America breached or

identify what actual damages the Esquivels suffered.    (Mtn. at 9).  This argument is also

frivolous. The Modification Agreement which Bank of America breached is attached as Exhibit 2

to the Complaint ("Agreement").   Its language is explicit, and both the Complaint and

Modification Agreement are specific about what terms were breached.

The entire purpose of a loan modification is to bring the borrower current and reduce

payments to an affordable level.   In this case, the Agreement made the Esquivels current as of its

effective date, February 1, 2012 (Agreement ¶  3(B)) by reducing their principal balance from the

unpaid portion of the Esquivel's original $322,975 loan, Complaint ¶ 13)  to $226,755.02. (*Id.* ¶

17;    Modification Agreement ¶   3(B) ("The new principal balance of my Note will be

$226,755.02")).    Bank of America breached that term by "continu[ing] to treat the loan as if it

were in default" (Complaint ¶ 23), and demanding payments of thousands of dollars of "arrears,"

*Id.* ¶¶ 24, 28.   Although the Esquivels made the monthly payments set out in the Agreement, ¶

3(D), of $1,515.96, (Complaint ¶ 17, 20-21), Bank of America demanded a greater amount --

$2,088.43,  *id.* ¶ 24, and then proceeded to foreclosure. *Id.* ¶ 28.

Moreover, Bank of America can cite no authority for its contention that Plaintiffs must

identify specific contractual language in their Complaint to state a claim.    Plaintiffs properly

plead a breach of contract claim, which requires: (1) the existence of a contract; (2) Plaintiffs'

- 6 -

1   performance or excuse for non-performance; (3) Defendants' breach of the contract; and (4)

2   resulting damages.   *See Armstrong Petroleum Corp. v. Tri Valley Oil & Gas Co,.* 116

3   Cal.App.4th 1375, 139 (2004).   The Federal Rules of Civil Procedure require only notice

4   pleading, "a short and plain statement of the claim showing that the pleader is entitled to relief,"

5   Rule 8(a)(2) – not the detailed "code pleading" required in California courts. *Fanucchi & Limi*

6   *Farms v. United Agri Prods.*, 414 F.3d 1075, 1082 (9th Cir. 2005).   In any case, Plaintiffs have

7   more than satisfied the requirements under either standard: as Bank of America notes, they

8   describe a "litany of way by which Bank of America supposedly breach the purported

9   modification agreement." (Mtn. at 9) (Compl. at ¶ 44).   Plaintiffs allege they had a binding

10  permanent modification and that by attempting to enforce the prior promissory note, Bank of

11  America breached the new agreement by failing to acknowledge the new payment amount and

12  referring the property to foreclosure.   They adequately alleged that Bank of America charged

13  interest and fees not due under the Agreement. (*Id.* ¶ 30, 44).

14      Plaintiffs also sufficiently plead contract damages.   General damages are those that

15  naturally arise from the breach or that might have been reasonably contemplated or foreseen by

16  the parties at the time they contracted as the probable result of a breach. *Glendale Fed. Sav. &*

17  *Loan Ass'n v. Marina View Heights Dev. Co.*, 66 Cal. App. 3d 101, 125 (1977).   They need not be

18  specially pleaded.   *Myers v. Stephens*, 233 Cal. App. 2d 104, 120 (1965).   Moreover, it is not

19  necessary to point out in detail the nature and extent of general damages. The question as to how

20  they arose from the breach of contract, otherwise than as disclosed by the general allegation of

21  damages, is the subject of evidence, rather than pleading.   *Colvig v. RKO General, Inc.*, 232 Cal.

22  App. 2d 56, 68-69 (1965).

23      Plaintiffs, however, make specific allegations that they were damaged by Bank of

24  America's breach in that Bank of America tried to collect well over $10,000 of arrears they did

25  not owe (Compl. ¶ 28) that it sought to collect on the amount of their original unpaid balance

26  even though it had induced them to enter into a $93,000 debt to HUD in exchange for a reduction

27  of that debt (*id.* ¶ 25) that it brought them to the brink of foreclosure (*id.* ¶ 28) imposed fees in

28  breach of the contract, and harmed their credit (*id.* 30).   These allegations more than meet the

- 7 -

1  *Iqbal* standard for pleading contract damages.

2  **C.   PLAINTIFFS STATE A CLAIM FOR PROMISSORY ESTOPPEL**

3  Promissory estoppel makes a "promise binding under certain circumstances, without

4  consideration in the usual sense of something bargained for and something given in exchange."

5  *Garcia v. World-Sav., FSB*, 183 Cal. App. 4th 1037, 1040-41 (2010) (*citing Youngman v. Nev.*

6  *Irrigation Dist.*, 70 Cal. 2d 240, 249 (1969)).  If the language or conduct of an individual leads

7  another to act as he or she would not have acted, then he or she  should not be denied the

8  "expectations upon which he acted." *Id*.  The equitable doctrine of promissory estoppel has three

9  basic elements: (1) a clear promise; (2) reasonable reliance; and (3) injury.  *Division of Labor*

10  *Law Enforcement v. Transpacific Transportation Co.*, 69 Cal. App. 3d 268, 276 (1977).

11  Plaintiffs' allegations suffice to meet these elements.

12  First, Plaintiffs allege that Bank of America clearly and unambiguously promised a

13  permanent loan modification if they agreed to a subordinate note and lien on their property.

14  (Compl. at ¶ 47).  Second, Plaintiffs allege that they reasonably relied to their detriment on these

15  representations, by allowing the subordinate note and lien on their residence that would not

16  otherwise be on the property.  (Compl. ¶ 48).  Whether or not Plaintiffs' reliance actually was

17  reasonable is a question for the fact-finder – which is a question unsuitable for resolution on a

18  motion to dismiss.  *Makaeff v. Trump University*, 2011 WL 1872654 at *3 (S.D. Cal. 2011)

19  (*citing Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995)); *see also West Shield*

20  *Investigations and Security Consultants v. Superior Court*, 82 Cal. App. 4th 935, 957 (2000).

21  Finally, Plaintiffs allege they were injured by imposition of the note and lien in an amount over

22  $93,000 without benefit of the permanent modification.  (Compl. ¶ 51).

23  Allegations that include a servicer's failed written and oral promises to provide a

24  permanent modification have been held actionable under the doctrine of promissory estoppel.  *See*

25  *Wilcox v. EMC Mortg. Corp.*, 2011 U.S. Dist. LEXIS 82128 *13-14, *17-18 (C.D. Cal. July 25,

26  2011) (finding a complaint with allegations that defendant failed to provide the promised

27  permanent modification "pleads a textbook claim for promissory estoppel"); *see also Krouse v.*

28  *BAC Home Loans Servicing, LP*, 2011 U.S. Dist. LEXIS 140044 (E.D. Cal. Dec. 5, 2011)

- 8 -

1    (finding a failed promise to provide a permanent modification despite completion of the a trial

2    period plan supports an action for promissory estoppel); *Aceves v. U.S. Bank, N.A.*, 192 Cal. App.

3    4th 218, 227 (2011) (borrower's claim that she refrained from seeking Chapter 13 bankruptcy

4    protection in reliance on lender's promise to negotiate loan modification, then suffered harm

5    when lender foreclosed, states promissory estoppel claim), *modified*, 2011 Cal. App. LEXIS 158

6    (2d Dist. Feb. 9, 2011).  Therefore, Plaintiffs state a "textbook" claim for promissory estoppel.

7          **D.      PLAINTIFFS HAVE STANDING UNDER THE UCL BECAUSE
                     PLAINTIFFS HAVE SUFFERED INJURY-IN-FACT AS A RESULT OF
8                    BANK OF AMERICA'S ACTIONS.**

9          Bank of America's claim that the Complaint does not adequately allege injury that could

10   give rise to standing under the Unfair Competition Law ("UCL") is nothing short of outrageous.

11   The Complaint alleges that the Esquivels entered into and performed on a contract for permanent

12   loan modification, but Bank of America nonetheless demanded payments higher than those called

13   for in the contract and imposed unwarranted fees, increasing their alleged unpaid balance.

14   (Compl. ¶ 4).   The Complaint alleges that Bank of America imposed a $93,000 lien on the

15   Esquivels' home, supposedly as a condition of the permanent loan modification, but then

16   continued to demand the old unpaid balance – with a net result that the Esquivels supposedly

17   owed both their old loan balance and $93,000 to HUD.  (*Id.* ¶¶ 19, 22, 24, 28).   The Complaint

18   alleges that Bank of America's incorrect credit reporting caused them economic damage.

19   (Compl. ¶¶ 27, 30). There is simply no doubt that these allegations are sufficient to confer

20   standing under the UCL.

21         The UCL prohibits, and provides civil remedies for unfair competition, which it defines as

22   "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

23   Its purpose "is to protect both consumers and competitors by promoting fair competition in

24   commercial markets for goods and services." *Kasky v. Nike, Inc.,* 27 Cal.4th 939, 949 (2002).  To

25   meet the standing requirements under the UCL, a party must (1) establish a loss or deprivation of

26   money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that

27   that economic injury was the result of, i.e., caused by, the unfair business practice or false

28   advertising that is the gravamen of the claim.  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310,

- 9 -

322 (2011). The standing requirements originate from Proposition 64, which was designed to make sure that private attorneys could not bring abusive UCL claims on behalf of clients who had no actual business dealings with a defendant. *Id*. at 321.

The Complaint indisputably alleges that Plaintiffs have had continued business dealings with the Defendants (Compl. ¶¶ 15-28) and have suffered genuine economic harm as a result of their unlawful, unfair practices. (Compl. ¶¶ 30, 44, 81, 82).

Economic injury from unfair competition can take numerous forms. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. *Kwikset*, 51 Cal. 4th at 323. The facts alleged in the complaint meet several of these criteria. First, Plaintiffs have a present or future property interest diminished due to the encumbrance with a debt and lien for over $93,000. Compl. at ¶ 79, 81. Second, by wrongfully initiating foreclosure proceedings against the Plaintiffs' residence, Bank of America has threatened Plaintiffs with deprivation of money or property to which they have a cognizable claim. *Id.* at ¶ 79.. Finally, Plaintiffs were required to enter the transaction encumbering their residence with a *$93,000* debt and lien that would have been unnecessary but for Bank of America's promise to provide a permanent modification. *Id.* at ¶ 79, 81. Therefore, Plaintiffs have suffered injury-in-fact sufficient to allege standing under the UCL.

That a plaintiff's economic injury come "as a result of" the unfair competition in its plain and ordinary sense means "caused by," and requires only a showing of a causal connection or reliance on the alleged misrepresentation." *Kwikset* , 51 Cal. 4th at 326. Plaintiffs allege Bank of America misrepresented that it would provide Plaintiffs with a permanent modification in exchange for Plaintiffs agreement to imposition of a $93,000 note and subordinate lien on their residence. (Compl. ¶ 80). Plaintiffs relied on this misrepresentation, which caused them to agree to the injury-in-fact. (*Id.* ¶¶ 19, 20 48). Therefore, Plaintiffs have standing to bring the UCL claim because they have suffered injury-in-fact caused by Bank of America's misrepresentation.

- 10 -

1    None of the cases cited by Bank of America are to the contrary.  (Mtn. at 7).  They stand

2    only for the unremarkable proposition that a conclusory statement that a plaintiff "lost money or

3    property and suffered an injury in fact," without specific factual allegations describing the injury,

4    are insufficient to state a claim.  As shown above, Plaintiffs here allege specific facts showing

5    injury-in-fact, caused by Bank of America.  Plaintiffs' UCL claim should stand.

6    **E.    PLAINTIFFS STATE UNFAIR DEBT COLLECTION CLAIMS UNDER
          BOTH CALIFORNIA'S ROSENTHAL ACT AND THE FEDERAL FAIR
7          DEBT COLLECTION PRACTICES ACT ("FDCPA")**

8    Bank of America also moves to dismiss Plaintiffs' unfair debt collection claims, arguing

9    that neither the federal nor state statute applies to mortgage debt, mortgage servicers, or this

10   loan.  However, well-established federal law applies the FDCPA to mortgage debt collection

11   activities like those alleged here.  *See, e.g., Gburek v. Litton Loan Servicing LP*, 614 F.3d 380,

12   382 (7th Cir. 2010) (FDCPA applies to mortgage servicer's communications to borrower about

13   avoiding foreclosure); *Bridge v. Ocwen Fed. Bank, FSB,* 681 F.3d 355, 359 (6th Cir. 2012)

14   (FDCPA applies to mortgage loan servicers who are assigned the debt after default); *In re*

15   *JPMorgan Chase Mortgage Modification Litigation*, 2012 U.S. Dist. LEXIS 104486, *54-61 (D.

16   Mass. July 27, 2012) (mortgage servicer's loss mitigation communications covered by both

17   Rosenthal Act and FDCPA).

18   Likewise, most published cases clearly recognize that the Rosenthal Act applies to

19   mortgage servicers attempting to collect on home mortgage loans through non-foreclosure

20   activities.  *See, e.g., Osei v. Countrywide Home Loans*, 692 F.Supp.2d 1240, 1248 (E.D. Cal.

21   2010);  *Champlaie v. BAC Home Loans Servicing, LP*, 706 F.Supp.2d 1029, 1054-55 (E.D. Cal.

22   2009);  *Alkan v. Citimortgage, Inc.*, 336 F.Supp.2d 1061, 1064 (N.D. Cal.2004).

23   Bank of America cites a handful of cases that have mistakenly relied on jurisprudence

24   stating that the federal Fair Debt Collection Procedures Act does not cover the *act of foreclosure,*

25   or creditors collecting on their own debts, in order to make broader, unsupported conclusions that

26   the Rosenthal Act and FDCPA do not apply at all to mortgage servicers or collection of mortgage

27   debt.  As set out more fully below, each of these cases represents an unwarranted misapplication

28   of the law.

- 11 -

This Court saw through loan servicers' similar efforts to exclude all mortgage-related activity, not just the act of foreclosure, from the coverage of unfair debt collection laws well over two years ago, in *Gumbs v. Litton Loan Servicing*, 2010 U.S. Dist. LEXIS 47890 (E.D.Cal. May 13, 2010).   There, as here, homeowners alleged the mortgage servicer regularly engaged in debt collection and had misrepresented the amount the homeowners owed, tried to collect on fees they did not owe, falsely reported the amount of their mortgage debt to credit reporting agencies, and used unfair means to collect debt.   *Id.* at 11-12.   This Court reasoned:

> Litton Loan further argues Plaintiffs' Rosenthal Act claim fails because "conduct arising out of a foreclosure proceeding is not governed by the Rosenthal Act." (Defs.' Mot. 16:2-3.), citing as authority *Izenberg v. ETS Services, LLC*, 589 F. Supp. 2d 1193, (C.D. Cal. 2008) (finding defendant was not "collecting a debt" when it sought to foreclose on property); *Inez v. Countrywide Home Loans, Inc.*, No. 08cv1267 WQH (NLS), 2008 U.S. Dist. LEXIS 88739, 2009 WL 4791863, at *1-*3 (S.D. Cal. Nov. 3, 2008) (finding plaintiff's allegation they were being "wrongfully ousted" was not "debt collection" under the Rosenthal Act); and *Walker v. Equity 1 Lenders Group,* No. 09cv325 WQH (AJB), 2009 WL 1364430, at *7 (S.D. Cal. May 14, 2009) (finding the allegations in the complaint "support that Defendants were foreclosing on the property" and not collecting a debt within the meaning of the Rosenthal Act). However, the cases cited by Litton Loan stand for the proposition that foreclosure pursuant to a Deed of Trust does not constitute "debt collection." Here, Plaintiffs' Rosenthal Act claim does not concern a foreclosure pursuant to a Deed of Trust; rather Plaintiffs allege that Litton Loan made deceptive phone calls, sent letters, and engaged in unlawful acts in an attempt to collect a debt it was not lawfully owed. See, e.g., *Azzini v. Countrywide Home Loans,* No. 09cv787 DMS (CAB), 2010 U.S. Dist. LEXIS 24572, 2010 WL 962856, at *3 (S.D. Cal. March 15, 2010) (rejecting similar argument in denying motion to dismiss Rosenthal Act claim). Therefore, Litton Loan's arguments do not justify dismissal of Plaintiffs' Rosenthal Act claim, and this portion of the motion is denied.

*Id.* at 12-13.   The Court should follow this sound reasoning and find that Plaintiffs' allegations of unfair debt collection state a claim under both acts.

///

///

1.   **PLAINTIFFS' FEDERAL FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA") CLAIM (FOURTH CAUSE OF ACTION) IS VALID BECAUSE THE ESQUIVELS' MORTGAGE LOAN IS A "DEBT" AND BANK OF AMERICA IS A "DEBT COLLECTOR" UNDER THE FDCPA**

Bank of America ignores clear statutory language, case law, documented facts and common sense when it erroneously and frivolously asserts that Plaintiffs' mortgage is not a "debt" under the Fair Debt Collection Practices Act and Bank of America is not a "debt collector" under the Act.  (Mtn. at 3-6).

a.   **Mortgage Servicers Are Subject to the FDCPA**

Mortgage servicers and collection activities on mortgage debts by servicers are clearly covered by the FDCPA.  The prohibitions on unfair debt collection in 15 U.S.C. §§ 1692c-1692g apply to "debt collectors," defined as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another….

15 U.S.C. § 1692a(6).   The FDCPA provides an additional definition applicable for the purposes of a single provision: "for the purpose of [section 1692(f)] of this title, ["debt collector"] also includes any person who uses any instrumentality of interstate commerce or the mails in any business, the principal purpose of which is the enforcement of security interests."  The Consumer Financial Protection Bureau ("CFPB"), the federal administrative agency tasked by Congress with enforcing the FDCPA, *see* 12 U.S.C. §§ 5481(12)(H), 5512(b)(1), 5581(b)(5) and 15 U.S.C. § 1692l, recently addressed the application of the FDCPA to mortgage servicers and mortgage debt.  RJN at 1:25-2:7 and Exh. 1 to the Declaration of Elizabeth Letcher, Brief of the CFPB as *Amicus Curiae* In Support of Plaintiffs-Appellants and Reversal, *Birster v. American Home Mortgage Servicing, Inc.*, No. 11-13574-G (11th Cir. Dec. 21, 2011)("CFPB Brief").  This Court should give the interpretation of a statute by the agency charged with its administration considerable respect.  *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555. 566 (1980);  *see also Pfeiffer v. Countrywide Home Loans,* 2012 Cal.App. LEXIS 1265, *19- (December 13, 2012)

- 13 -

1   (taking judicial notice of the *Birster* amicus brief).  The CFPB explained that the FDCPA applies

2   to the collection efforts of mortgage servicers, even if the servicer is simultaneously moving

3   forward with foreclosure proceedings.  CFPB Brief at 29-30.  Enforcers of security interests are

4   not in the list of entities excluded from the definition of "debt collector; CFPB Brief. at 18, citing

5   15 U.S.C. § 1692a(6)(A)-(F).  Even if a mortgage servicer enforces security interests, it is subject

6   to the entire FDCPA provided it meets the general definition of "debt collector."  CFPB Brief 18-

7   24.  The FDCPA bars harassing, abusive, and unfair debt collection by a mortgage servicer even

8   if made in connection with enforcement of a security interest.  CFPB Brief *at* 25.  Plaintiffs

9   allege, here, that Bank of America attempted to collect on debts not owed by Plaintiffs and

10   misrepresented their mortgage as in default when it was current under the modified agreement.

11   (Compl. ¶¶ 4, 23-28).  Bank of America's collection efforts vis-à-vis the Esqivels, therefore,

12   constitute unfair debt collection and fall under the purview of the FDCPA.

          **b.**       **Bank of America Is A "Debt Collector" Under the FDCPA Because It Obtained the Servicing Rights to Plaintiffs' Mortgage After Plaintiffs Defaulted**

16        Bank of America also incorrectly argues that it falls under an exception to the definition of

17   "debt collector" and is therefore not subject to the FDCPA (Mtn. at 4), despite facts which show

18   that the exception does not apply here because Bank of America acquired the servicing rights to

19   Plaintiffs' loan after Plaintiffs defaulted.  A person collecting on his own debt is a "creditor,"

20   rather than a "debt collector" -- unless he or she acquired the debt when it was already in default.

21   15 U.S.C. § 1692a(4) (definition of "creditor," excluding "any person to the extent that he

22   receives an assignment or transfer of a debt in default solely for the purpose of facilitating

23   collection of such debt for another");  *see also* 15 U.S.C. § 1692a(6)(f)(iii) ("debt collector"

24   excludes those collecting on "a debt which was not in default at the time it was obtained by such

25   person").

26   ///

27   ///

28   ///

- 14 -

Bank of America, N.A. faults Plaintiffs' Complaint for failing to specifically allege that the Esquivels' mortgage loan was in default when Bank of America, N.A. acquired servicing rights to plaintiffs' mortgage after Plaintiffs defaulted. (Mtn. at 4). But there is no such pleading requirement. Plaintiffs allege Bank of America is a "debt collector" under the FDCPA, Complaint ¶ 61, and, as explained above, mortgage servicers can be debt collectors under the act.

Further, Bank of America, N.A., did, in fact, acquire the debt when Plaintiffs were already in default. The Complaint alleges that the Esquivels fell behind on their mortgage payments and then applied for a mortgage modification in August, 2011. (Compl. ¶ 15). At the time the Esquivels defaulted, their loan was in fact serviced by BAC Home Loans Servicing, LP. Bank of America, N.A. became their servicer only as of July 1, 2011 – the judicially noticeable date that Bank of America, N.A. became successor by merger to BAC Home Loans Servicing. RJN at 2:18-3:10 and Letcher Decl. Exhibits 2-5. That date was well after their default.[1]

Moreover, to the extent Plaintiffs are required to expressly allege Bank of America, N.A. acquired the debt after default, and have failed to do so, Plaintiffs can easily amend to make that allegation. Federal Rule of Civil Procedure 15(a)(2) requires this Court to freely give leave to amend pleadings when justice so requires. Plaintiffs respectfully request that they be permitted to amend their complaint to allege 1) that Plaintiffs defaulted at some time before June 2011; 2) that BAC Home Loans Servicing, LP was their servicer when they defaulted; and 3) that Bank of America, N.A. became their mortgage loan servicer and began its debt collection activity only after the loan was already in default.

These facts would be sufficient to show that the subsection (F)(iii) exception to the definition of "debt collector" does not apply to defendant Bank of America, N.A.

### c.   Plaintiffs' Mortgage Is A "Debt" Under the FDCPA

In a three-sentence paragraph, without even bothering to cite the FDCPA itself, Bank of America asserts that a mortgage is not considered a "debt" under the FDCPA. Mtn. at 5:6-6:8. Bank of America's argument is erroneous as a mortgage clearly is a "debt" under the FDCPA.

---

[1]   Bank of America's own servicing records will readily show that the Esquivels were several months in arrears by June 2011.

The FDCPA's definition of "debt" is broad, clear, and covers mortgages.  Specifically, "[t]he term "debt" means any obligation…of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes."  15 U.S.C. § 1692a(5).  A residential mortgage, which is a monetary obligation borne by the consumer for money to purchase real property, clearly falls within this definition.  As the Ninth Circuit has held with respect to debt incurred to build a family home, "[t]here could not be a more quintessential personal, family, or household purpose."  *Slenk v. Transworld Sys*., 236 F.3d 1072, 1075 (9th Cir. 2001); *see also Bush v. Loanstar Mortgagee Servs.*, 286 F.Supp.2d 1210, 1213 (N.D.Cal. 2003) (mortgage is "clearly" a debt under FDCPA).

The few FDCPA cases Bank of America cites use the same flawed reasoning described below – improperly conflating *the act of foreclosure* with other debt collection activity.  *Hamilton v. U.S. Bank*, N.A.*,* 2011 U.S. Dist LEXIS 88140 (S.D. Cal. August 8, 2011), for example, cites to *Hulse v. Ocwen Federal Bank, FSB*, 195 F.Supp.2d 1188, 1204 (D. Or. 2002), but *Hulse* held only that "plaintiff may maintain any FDCPA claims based on alleged actions by [mortgage servicer] in collecting a debt, but may not maintain any FDCPA claims based on alleged actions made in pursuit of the actual foreclosure."[2]  Mortgages are covered by the FDCPA.

### 2.   CALIFORNIA'S  ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT ("ROSENTHAL ACT") CLAIM APPLIES TO MORTGAGE SERVICERS AND MORTGAGE DEBT

The plain language of the Rosenthal Fair Debt Collection Practices Act, Civil Code § 1788, *et seq.* ("Rosenthal Act" or "RFDCPA") defining debt collectors and consumer debt, Cal. Civ. Code § 1788.2,[3]   allows no other conclusion than that RFDCPA applies to mortgage

---

[2]   Courts have even split over whether foreclosure itself can constitute debt collection under the FDCPA.  *Compare Wilson v. Draper & Goldberg, P.L.L.C.,* 443 F.3d 373, 375-76 (4th Cir. 2006) (foreclosure-related activity is debt collection covered by the Act), and *Shapiro & Meinhold v. Zartman*, 823 P.2d 120, 124 (S.Ct. Colo. 1992) (foreclosure is a method of collecting debt and thus is covered by the Act).

[3]   Subsection (c) provides that "'debt collector' means any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. …."  Subsection (d) provides "'debt' means money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person."  Subsection (f) defines

- 16 -

servicers collecting mortgage debt.  The Rosenthal Act incorporates the unfair debt collection prohibitions of the federal FDCPA, Cal. Civ. Code § 1788.17.  Although Bank of America attempts to equate the two statutes, Mtn. at 4:20-5:5, the Rosenthal Act is actually more expansive in scope, and excludes no one from its coverage (except attorneys).  As the court explained in *Reyes v. Wells Fargo Bank, N.A.* 2011 U.S. Dist. LEXIS 2235, at \*59  (N.D. Cal. Jan. 3, 2011), for example, although the FDCPA excludes creditors collecting on their own debts, 15 U.S.C. § 1692a(6), that exclusion does not appear in the state statute.  *See* Cal. Civ. Code §1788.2(c).  Nor does the FDCPA's exclusion of "loan servicers who acquire servicing rights before a mortgage loan is in default" (Mtn. at 7-10, *citing* 15 U.S.C. § 1692a(6)(f)), appear anywhere in the Rosenthal Act.[4]

As this Court has held multiple times, the broad consumer protections of the Rosenthal Act apply to mortgage debt and mortgage servicing. *See, e.g., Day v. American Home Mortgage Servicing*, Case No. 2:09-cv-02676-GEB, 2010 U.S. Dist. LEXIS 63033, at \*7 (E.D. Cal. 2010) (complaint adequately alleges mortgage servicer is debt collector under Rosenthal Act);  *see also Vanduzen v. Homecomings Financial*, Case No. 09-cv-01237-GEB, 2010 U.S. Dist. LEXIS 46106, at \*8 (E.D. Cal. 2010) (same).  In *Walters v. Fidelity Mortgage of California, Inc.*, 730 F.Supp.2d 1185 (E.D. Cal. 2010), for example, plaintiff alleged that the mortgage servicer had

---

"consumer debt" as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction."

[4]   The Court in *Penny v. NDeX West LLC*, 2012 U.S. Dist. LEXIS 22070 (C.D. Cal. Feb. 22, 2012), cited by Bank of America, incorrectly imported the FDCPA exclusion. There, the Court held that Wells Fargo did not "qualify as a 'debt collector' under the RFDCPA" because it "obtained its interest in Plaintiff's loan prior to default." *Id.*  at \*19.  However, the sole case upon which it based its conclusion, *Zhuravlev v. BAC Home Loans Servicing, LP*, 2010 U.S. Dist. LEXIS 73874 (N.D. Cal. July 20, 2010), discussed *only* § 1692a(6)(F) of the FDCPA, and did not consider the plaintiff's Rosenthal Act claims. *Id.* at \*5-7.   The same is true of *Nool v. Homeq Servicing*, 653 F.Supp.2d 1047 (E.D. Cal. 2009).  The *Nool* court failed to even cite the state statute's definition of "debt collector," *id.* at 1053, instead simply and erroneously applying the FDCPA's "default" exclusion to plaintiff's RFDCPA claim.  *Id.*  There is no basis for importing the federal exclusion to the Rosenthal Act.  Even if this exclusion were to apply under the Rosenthal Act, Plaintiffs can amend to allege that Bank of America began servicing the Esquivels' loan after they defaulted.  *See section IV.A.2.b, infra.*

1  wrongfully claimed plaintiff was in default, failed to credit timely payments, wrongfully

2  increased the monthly payments, and foreclosed.  *Id.* at 1191-94.   Denying the servicer's motion

3  to dismiss, Judge Damrell reasoned that because "plaintiff's claim arises out of debt collection

4  activities beyond the scope of the ordinary foreclosure process,…a remedy may be available

5  under the [Rosenthal Act]."  *Id.* at 1203.   The Esquivels' analogous claims against Bank of

6  America arise from the same debt collection activities, such as failing to credit timely payments,

7  Complaint ¶ 23, demanding more money than the modified loan called for, *id.* ¶ 24, and

8  incorrectly reporting to the credit agencies that the Esquivels were late in their payments, *id.* ¶

9  27, and so too state a claim.

10        Bank of America's citations to the contrary are fundamentally flawed, and cannot stand up

11  to reasoned scrutiny.  The progenitor of many of these cases finding the Rosenthal Act does not

12  apply, *Ines v. Countrywide Home Loans, Inc.,* 2008 U.S. Dist. LEXIS 88739 (S.D. Cal. 2008), is

13  illustrative.   *Ines* is a two page order granting a motion to dismiss with leave to amend an

14  unintelligible complaint that invoked the Rosenthal Act and FDCPA in objection to a non-judicial

15  foreclosure.  *Id.* at 2-3.  Devoting only four sentences to the FDCPA and Rosenthal Act claims,

16  *Ines* cited only two non-California cases, which respectively held the federal FDCPA does not

17  apply to foreclosure activities or mortgage servicers, to conclude the mortgage servicer was not a

18  debt collector.   *Id.* 6.   This scant reasoning helped form the basis for a line of cases which

19  successively cited each other – most decided within a space of several months.

20        The patent flaw in this authority claiming mortgage debt and mortgage servicers are not

21  covered by the Rosenthal Act – other than its total lack of support in the language of the Act itself

22  – is its reliance on cases holding *foreclosure* pursuant to a deed of trust is not "debt collection," to

23  conclude that *mortgage debt* is not consumer debt.   For example, *Morgera v. Countrywide Home*

24  *Loans, Inc.*  No. 09-CV-1476-MCE, 2010 U.S. Dist. LEXIS 2037 (E.D. Cal. Jan. 12, 2010),

25  concludes that courts have "declined to regard a residential mortgage loan as a 'debt,'" but cites

26  only to *Pittman v. Barclays Capital Real Estate, Inc.*, No. 09CV0241, 2009 U.S. Dist. LEXIS

27  34885, 3 (S.D. Cal. April 24, 2009**) ("foreclosing on a deed of trust** does not invoke the

28  statutory protections"), *Ines, supra* at 7 ("**foreclosure** on Plaintiff's property pursuant to a deed of

- 18 -

1  trust .. does no fall within the meaning of the RFDCPA"), and *Castaneda v. Saxon Mortg.*

2  *Services, Inc.*, No. 09-CV-01124, 687 F. Supp. 2d 1191 (E.D. Cal. 2009) (reasoning, without

3  analysis, that because "foreclosure pursuant to a deed of trust does not constitute debt collection

4  under the RFDCPA," then "residential mortgage loans do not fall within the RFDCPA").[5]   Cases

5  reasoning that mortgages must not count as "debt" simply because foreclosure isn't covered are

6  similarly flawed.  *See Azzini v. Countrywide Home Loans*, 2010 U.S. Dist. LEXIS 24572, at 7

7  (S.D. Cal. Mar. 15, 2010) (rejecting argument that residential mortgage loan is not "debt" under

8  the statute;  "[t]he cases cited by Defendant… stand for the proposition that foreclosure pursuant

9  to a deed of trust does not constitute "debt collection").

10          Plaintiffs acknowledge that this Court has, in one instance, agreed with Defendant's

11  position.  This Court, in *Gardner v. American Home Mortgage Servicing, Inc.*, 691 F. Supp. 2d

12  1192, 1198-99 (E.D. Cal. 2010), concluded, on the basis of cases holding that *foreclosure* is not

13  debt collection, and the flawed decision in *Morgera*, *supra*, that mortgages are not consumer debt

14  subject to the Rosenthal Act.   The Court should return to its correct analysis in *Gumbs*, *supra*,

15  and conclude, as have other courts, that "[w]here the claim arises out of debt collection activities

16  beyond the scope of the ordinary "foreclosure process", the Rosenthal Act applies.  *Reyes, supra*,

17  at 60-61 and n.8.   Plaintiffs request that the Court conclude, in keeping with both the plain

18  language of the statute and the Rosenthal Act's broad remedial purpose, that mortgage debt and

19  mortgage debt collection activities are covered and Plaintiffs state a claim.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

---

26  [5]   Some other cases stem from federal cases incorrectly excluding mortgage servicers from the
27  definition of "debt collector" under the federal FDCPA, citing 15 U.S.C. § 1692(a)(6).  But, as set
    out more fully in section IV.F.1.b, *infra*, the FDCPA in fact covers mortgage servicers' debt
28  collection activities, other than the act of foreclosure, if the servicer was assigned the loan in
    default.

**V.     CONCLUSION**

        For all of the above-stated reasons, the Court should deny Bank of America's Motion to

Dismiss in its entirety.

Dated: January 8, 2013

Respectfully submitted,

JENKINS MULLIGAN & GABRIEL LLP

LAW OFFICE OF ERIC ANDREW MERCER

HOUSING AND ECONOMIC RIGHTS
ADVOCATES


By: _/s/_____
        ERIC ANDREW MERCER
        Attorneys for Plaintiffs

ERIC ANDREW MERCER, SBN 248707
LAW OFFICE OF ERIC ANDREW MERCER
770 L Street, Suite 950
Sacramento, CA 95814
Telephone:     (916) 361-6022
Facsimile:     (916) 361-6023
Email:         mercerlegal@me.com

MAEVE ELISE BROWN, SBN 137512
ELIZABETH S. LETCHER, SBN 172986
JIM W. YU, SBN 209118
HOUSING AND ECONOMIC RIGHTS
ADVOCATES
1814 Franklin Street, Suite 1040
Oakland, CA 94612
Tel: (510) 271-8443
Fax: (510) 868-4521
eletcher@heraca.org

- 20 -

**CERTIFICATE OF SERVICE**

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) and paper copies will be sent to those indicated as non-registered participants on January 8, 2013.

Dated: January 8, 2013              LAW OFFICE OF ERIC ANDREW MERCER

                                  By: _/s/_____

                                      ERIC ANDREW MERCER
                                      Attorney for Plaintiffs