UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO ESQUIVEL and BEATRIZ ESQUIVEL, individually, on behalf of all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; and Does 1 through 10, inclusive,<br><br>Defendants. | No. 2:12-cv-02502-GEB-KJN<br><br>**ORDER ON DEFENDANTS' DISMISSAL MOTION** |

Defendants Bank of America, N.A., and Bank of America Corporation ("Bank of America and/or Defendants") move for dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(6) of Plaintiffs' following state claims: breach of contract, promissory estoppel, California Consumer Credit Reporting Agencies Act, Rosenthal Fair Debt Collection Practices Act, and unfair business practices.[1] In essence, this putative class action concerns Defendants' alleged conduct regarding a permanent loan modification under the Home Affordable Modification Program ("HAMP").

---

[1] Plaintiffs' Federal Debt Collections Act claim was previously dismissed in an order filed February 21, 2013. (Order, ECF No. 32.)

1

## I.   FACTUAL ALLEGATIONS

Plaintiffs allege the following in their Class Action Complaint ("Complaint"). Plaintiffs "Beatriz and Antonio Esquivel are senior citizens who own and live at their home at 430 La Esperanza Drive in Dixon, California." (Compl. ¶ 12, ECF No. 1.) They "bought their home in 2001," and they refinanced their home in 2009 "with a loan of approximately $322,975 insured by the Federal Housing Administration ("FHA")." (Id. at ¶ 13.) Subsequently, Plaintiffs "fell behind on their mortgage payments," and "applied to their mortgage servicer, . . . Bank of America, for a mortgage modification in or about August, 2011." (Id. at ¶ 15.)

Initially, Bank of America offered, and Plaintiffs accepted, a "trial mortgage modification" that "required monthly trial period plan payments of $1,509.52." (Id. at ¶ 16.) Plaintiffs timely made the monthly payments, and subsequently, Bank of America offered Plaintiffs a permanent modification under the FHA's Home Affordable Modification Program ("HAMP") in late February, 2012. (Id. at ¶¶ 16–17.) Under the FHA-HAMP partial claim procedure:

> the lender reduces the loan principal as part of a modification, requiring the borrower to execute a promissory note and subordinate mortgage payable to the Secretary of Housing and Urban Development. The partial claim promissory note caries no interest, and is not due until the borrower pays off the mortgage or no longer owns the property. The lender then files the partial claim against the FHA mortgage insurance, and is compensated by HUD both for the amount of the reduction in principal, and with incentive payments for the partial claim and for modification under the HAMP program.

(Id. at ¶ 14.)

Specifically, Bank of America offered Plaintiffs an FHA-HAMP permanent modification which would reduce the unpaid balance on the note to $226,755.02 and the interest rate to 4.625%, and extend the term to thirty years. (Id. at ¶ 17.) The new principal and interest payments would be $1,165.84 per month; and with escrow included, the full monthly payment would start at $1,515.96. (Id.) As part of the modification, Plaintiffs would be required to sign a subordinate mortgage ("Partial Claim Mortgage") "under which Plaintiffs promise to pay the Secretary of Housing and Urban Development $93,591.63 under certain conditions." (Id. at ¶ 19.)

"The Esquivels accepted Bank of America's offer of an FHA-HAMP permanent loan modification by signing and notarizing the Modification Agreement, the Subordinate Note, and the Deed of Trust on February 25, 2012, returning the signed documents to Bank of America, and making payments under the modified mortgage." (Id. at ¶ 20.) The permanent HAMP agreement alters the terms of the mortgage for the remaining life of the loan." (Id.)

"The Esquivels made timely payments on their modified loan of $1,515.96 in March, April, May, June, and July, 2012. The Esquivels made their first payment of $1,515.96 on March 2, 2012 because they had already made a payment in February of $1,509.52- approximately six dollars less than the modified amount." (Id. at ¶ 21.)

"Despite the Esquivels' months of timely payments on their modified loan, and Bank of America's recordation of the partial claim deed of trust, Bank of America has continued to

3

1 treat the loan as if it were in default." (Id. at ¶ 23.) "The
2 Esquivel's June, 2012 mortgage statement states that they were
3 over $10,000 in arrears on their loan." (Id. at ¶ 24.) "In July,
4 2012, Bank of America sent them a letter stating the amount they
5 had paid was insufficient to cover the full payment due of
6 $2,088.43, and returning partial payment to them. Bank of America
7 has since refused to accept further payments on the loan." (Id.)

> Bank of America reported to . . . credit reporting agencies that they were increasingly late on their mortgage payments. From February, 2012, when the Esquivels became current on their mortgage, to the present, Bank of America reported them as between 120 days and 180 days late on their mortgage.

(Id. at ¶ 27.) Further, "Bank of America recorded a Notice of Default against the property on or about August 2, 2012. . . . The Notice of Default asserted that the Esquivels were over $13,000 in arrears on their loan." (Id. at ¶ 28.)

"Because of Bank of America's . . . conduct in treating the loan as in default and attempting to foreclose on the home while Plaintiffs are current on their mortgage, Plaintiffs have suffered substantial damages, including but not limited to monetary damages from damage to their credit, unwarranted fees, and emotional harm." (Id. at ¶ 30.) Further, "[u]nless the Notice of Default is rescinded, Bank of America can, under California's nonjudicial foreclosure statute, proceed with foreclosure." (Id. at ¶ 29.)

Plaintiffs seek "judicial intervention to halt the sale of their home," damages, specific performance, injunctive relief, and restitution, together with attorney fees, costs, and

4

expenses. (Id. at ¶ 29, prayer for relief.)

## II. LEGAL STANDARD

Decision on a Rule 12(b)(6) dismissal motion requires determination of "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 (9th Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. v. Twombly, 550 U.S. 544, 556 (2007)).

When determining the sufficiency of a claim under Rule 12(b)(6), "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation marks omitted). However, this tenet does not apply to "legal conclusions . . . cast in the form of factual allegations." Id. (internal quotation marks omitted). "Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." Id. (internal quotation marks omitted); see also Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

///
///
///

5

## III. DISCUSSION

**A.   Rosenthal Fair Debt Collections Act**

Defendants seek dismissal of Plaintiffs' claim alleged under the Rosenthal Fair Debt Collections Act, California Civil Code sections 1788, *et seq.*, ("Rosenthal Act"), arguing Bank of America is not a "debt collector" under the act because loan servicers who acquire servicing rights before the loan is in default do not qualify as debt collectors, and Plaintiffs "make[] no allegation that Plaintiffs defaulted on the loan *before* Bank of America obtained servicing rights." (Defs.' Mot. to Dismiss ("Defs.' Mot.") 4:5-7, 4:20-5:1, ECF No. 20.) Defendants further argue "that a mortgage loan is not a 'debt[,]' and collection efforts related to mortgage loans do not constitute 'debt collection' under the Act[]." (Id. at 5:7-9.)

Plaintiffs counter that "the plain language of the Rosenthal . . . Act . . . defining debt collectors and consumer debt . . . allows no other conclusion than that the R[osenthal Act] applies to mortgage servicers collecting mortgage debt." (Pls.' Mem. P.&A. Opp'n Mot. Dismiss ("Pls.' Opp'n") 16:20–17:1, ECF No. 21.) Specifically, Plaintiffs argue "the Rosenthal Act is . . . more expansive in scope, and excludes no one from its coverage," unlike the Federal Debt Collection Practice Act ("FDCPA"), which "excludes creditors collecting on their own debts" and "loan servicers who acquire servicing rights before a mortgage loan is in default."[2] (Id. at 17:2–10.) Plaintiffs further argue that "most published cases clearly recognize that

---

[2]   The February 21, 2013 Order, which dismissed Plaintiffs' FDCPA claim with prejudice, held that "neither Defendant is a 'debt collector' within the meaning of the FDCPA." (Order 5:1-10.)

6

the Rosenthal Act applies to mortgage servicers attempting to collect on home mortgage loans through non-foreclosure activities" as opposed to the act of foreclosure. (Id. at 11:18-28.)

California's Rosenthal Act was enacted "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts . . . ." Cal. Civ. Code § 1788.1. The Rosenthal Act defines the term "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). "Debt" is defined as "money, property or their equivalent which is due or owing or alleged to be due from a natural person to another person." Cal. Civ. Code § 1788.2(d).

"As a number of courts have recognized, the definition of 'debt collector' is broader under the Rosenthal Act than it is under the FDCPA . . . ." Reyes v. Wells Fargo Bank, N.A., No. C-10-01667 JCS, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2012). For example, the FDCPA explicitly excludes as "debt collector[s]" persons collecting or attempting to collect debt "which was not in default at the time it was obtained by such person[,]" whereas, the Rosenthal Act does not have such an exclusion. Compare 15 U.S.C.A. § 1692a(6)(F)(iii), with 1788.2(c); see also Gaudin v. Saxon Mortg. Sers., Inc., --- F.R.D. ----, 2013 WL 4029043, at *10 (N.D. Cal. 2013) (recognizing this distinction). Therefore, Defendants are not excluded as "debt collectors" under the Rosenthal Act because the Complaint lacks an allegation that

7

they obtained servicing rights after Plaintiffs defaulted on the loan.

Further, although district courts have been divided on the issue of whether non-foreclosure collection efforts related to a mortgage are outside the scope of the Rosenthal Act, the Ninth Circuit has recently applied the Rosenthal Act in the context of a bank's collection activities concerning a HAMP mortgage modification. See Corvello v. Wells Fargo Bank, N.A., --- F.3d ----, 2013 WL 4019279, at *6 (9th Cir. 2013) (stating "[t]he district court . . . correctly recognized that Wells Fargo was engaged in debt collection") (citing with approval Reyes, 2011 WL 30759, at *20).

For the stated reasons, the portion of Defendants' motion seeking dismissal of Plaintiffs' Rosenthal Act claim is DENIED.

**B.  Unfair Business Practices Claim**

Defendants seek dismissal of Plaintiffs' unfair business practices claim, alleged under California Business & Professions Code sections 17200, *et seq.*, ("§ 17200"), arguing Plaintiffs have not "plead sufficient facts to plausibly allege that they suffered an injury in fact and lost money or property as a result of [Defendants'] alleged actions." (Defs.' Mot. 6:10-13.)

Plaintiffs counter:

> The Complaint alleges that the Esquivels entered into and performed on a contract for permanent loan modification, but Bank of America nonetheless demanded payments higher than those called for in the contract and imposed unwarranted fees, increasing their alleged unpaid balance. (Compl. ¶ 4). The

8

> Complaint alleges that Bank of America imposed a $93,000 lien on the Esquivels' home, supposedly as a condition of the permanent loan modification, but then continued to demand the old unpaid balance - with a net result that the Esquivels supposedly owed both their old loan balance and $93,000 to HUD. (Id. ¶¶ 19, 22, 24, 28). The Complaint alleges that Bank of America's incorrect credit reporting caused them economic damage. ([Id.] ¶[¶] 27, 30). There is simply no doubt that these allegations are sufficient to confer standing under the UCL.

(Pls.' Opp'n 9:11-20.)

Section 17200 "prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.'" Kwikset Corp. v. Sup. Ct., 51 Cal. 4th 310, 320 (2011) (quoting Cal. Bus. & Prof. Code § 17200). Although "the substantive reach of [section 17200 is] expansive," 2004 amendments to section 17200's "standing requirement" limited "private standing . . . to any 'person who has suffered injury in fact and has lost money or property' as a result of unfair competition." Id. (quoting Cal. Bus. & Prof. Code § 17204.) "To satisfy the[se] narrower standing requirements . . . , a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice . . . that is the gravamen of the claim." Id. at 322. "There are innumerable ways in which economic injury from unfair competition may be shown[, including] . . . [the diminishment of] a present or future property interest . . . ." Id. at 323.

Here, Plaintiffs allege that "[a]s a direct and proximate result of [D]efendants' unlawful and unfair business

practices, Plaintiffs have been injured in fact and have lost money or property *due to the imposition of a $93,591.53 note and subordinate lien in favor of the Secretary of Housing and Urban Development on their residence*." (Compl. ¶ 81 (emphasis added).) Plaintiffs also allege that the $93,591.53 note and lien were imposed in connection with Defendants' offer of a permanent HAMP mortgage modification. (Id. at ¶ 17-22.) These allegations state sufficient facts to plausibly allege they suffered an injury in fact and lost money or property as a result of Defendants' alleged conduct. Therefore, the portion of Defendants' motion seeking dismissal of Plaintiffs' § 17200 claim is DENIED.

**C.   California Credit Reporting Agencies Act Claim**

Defendants seek dismissal of Plaintiffs' claim alleged under the California Consumer Credit Reporting Agencies Act ("CCRAA") on two grounds. "First, [Defendants argue,] to the extent Plaintiffs purport to assert a claim against Bank of America under any section of the CCRAA other than section 1785.25(a), the[] claim is preempted by the Federal Credit Reporting Act [("FCRA")]." (Defs.' Mot. 8:10-12.) Plaintiffs do not oppose this argument.

Section 1681t(b)(1)(F) of the FCRA prescribes:

> No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply— . . . (ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996).

10

1  15 U.S.C. § 1681t(b)(1)(F).

2  Since the referenced section of the FCRA expressly preempts state laws applicable to those who furnish information to consumer reporting agencies except California Civil Code § 1785.25(a), <u>to the extent Plaintiffs' CCRAA claim is based on any section of the CCRAA other than § 1785.25(a)</u>, the claim is preempted. Accordingly, this portion of Defendants' motion is GRANTED with prejudice.

Second, Defendants argue Plaintiffs' CCRAA claim alleged under § 1785.25(a) "also fail[s] because Plaintiffs sue Bank of America in its capacity as a furnisher of credit information," which Defendants contend "the CCRAA does not permit . . . ." (Defs.' Mot. 8:16–19.)

Plaintiffs rejoin:

> Defendant[s'] argument regarding furnishers is simply wrong. To support its argument that the CCRAA does not permit claims against furnishers, Bank of America cites two district court cases which, in turn, rely on a California appellate case, <u>Pulver v. Avco Fin. Serv.</u>, 182 Cal. App. 3d 622, 633 (1986). Bank of America's reliance on <u>Pulver</u> is misplaced. In <u>Pulver</u>, the court held that the CCRAA's Section 1785.31 did not apply to furnishers because the federal Fair Credit Reporting Act did not apply to furnishers, and the CCRAA's purpose had been to regulate consumer credit reporting agencies rather than those who furnish information to such agencies. <u>Pulver</u>, 182 Cal. App. 3d at 633-35. The <u>Pulver</u> court's decision, however, came in 1986, reviewing a prior version of the CCRAA that did not include Section 1785.25(a). The California legislature amended the CCRAA effective July 1, 1993[,] to include, *inter alia*, Section 1785.25 entitled "Obligations of Furnishers of Credit Information." <u>See</u> Cal. Civ. Code 1785.25. The FCRA, in turn, was amended in 1996 to exempt Section 1785.25(a) from preemption. <u>See Gorman v. Wolpoff & Abramson, LLP</u>, 584 F.3d 1147, 1172

```
                 (9th Cir. Cal. 2009). By the plain language
                 of the current statute, the CCRAA applies to
                 furnishers like Bank of America.
```
(Pls.' Opp'n 5:19-6:4.)

Section 1785.31 provides a private right of action for enforcement of 1785.25(a) against furnishers of credit information. See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1172-73 (9th Cir. 2009) (recognizing that 1785.25(a) may be enforced by "private rights of action" against "furnisher[s] of credit information"). Further, this "private right of action to enforce California Civil Code section 1785.25(a) is not preempted by the FCRA." Id. at 1173. Therefore, the portion of Defendants' motion seeking dismissal of Plaintiffs' CCRAA claim alleged under section 1785.25(a) is DENIED.

**D.   Breach of Contract Claim**

Defendants seek dismissal of Plaintiffs' breach of contract claim on two grounds: "First," Defendants argue "Plaintiffs neglect to allege what provisions of the [HAMP permanent] modification documents [Defendants] allegedly breached." (Defs.' Mot. 9:16-17.) "Second," Defendants argue "Plaintiffs' breach of contract claim fails for the additional reason that Plaintiffs have not alleged any actual damages resulting from [Defendants'] alleged breach." (Id. at 10:5-6.)

Plaintiffs counter: "[t]he Modification Agreement which Bank of America breached is attached as [an e]xhibit . . . to the Complaint . . . ; [i]ts language is explicit, and both the Complaint and Modification Agreement are specific about what terms were breached." (Pls.' Opp'n 6:13-15.) "Moreover, [Plaintiffs argue Defendants] can cite no authority for [their]

12

1  contention that Plaintiffs must identify specific contractual
2  language in their Complaint to state a [breach of contract]
3  claim." (Id. at 6:26-28.) Plaintiffs further rejoin that they
4  "sufficiently plead contract damages" since "it is not necessary
5  to point out in detail the nature and extent of general damages.
6  The question of how they arose . . . is the subject of evidence
7  rather than pleading." (Id. at 7:14-21.) Plaintiffs also argue:

> specific allegations [in their Complaint] that they were damaged by Bank of America's breach in that Bank of America tried to collect well over $10,000 of arrears they did not owe (Compl. ¶ 28) that it sought to collect on the amount of their original unpaid balance even though it had induced them to enter into a $93,000 debt to HUD in exchange for a reduction of that debt (id. ¶ 25) that it brought them to the brink of foreclosure (id. ¶ 28) imposed fees in breach of the contract, and harmed their credit (id. ¶ 30). These allegations more than meet the Iqbal standard for pleading contract damages.

16 (Id. at 7:23-8:1.)

17       To state a claim "for breach of contract, a plaintiff
18  must plead . . . (1) a contract, (2) plaintiff's performance or
19  excuse for nonperformance, (3) defendant's breach, and (4) damage
20  to plaintiff." Walsh v. W. Valley Mission Cmty. Coll. Dist., 66
21  Cal. App. 4th 1532, 1545 (1998).

22       Here, "the [permanent loan modification agreement] is
23  [attached to the Complaint] and . . . [Plaintiffs'] [C]omplaint
24  clearly sets out the facts and legal theory under which [they]
25  seek relief." Shroyer v. New Cingular Wireless Servs., Inc., 622
26  F.3d 1035, 1042 n.7 (9th Cir. 2010). Under such circumstances,
27  Defendants have not shown that the Plaintiffs must allege the
28  specific contractual provision breached to state a breach of

13

contract claim. Id. at 1042 (reversing district court's dismissal of breach of contract claim where the specific portions of the contract that the plaintiff alleges were violated where not set forth in the complaint); see also McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1490 (2006) (stating that "Plaintiffs have still failed to identify the . . . contractual provision under which Washington Mutual required them to pay underwriting and wire transfer costs," but holding that plaintiffs "stated a cause of action for breach of contract").

Further, Plaintiffs have sufficiently alleged damages resulting from Defendants' alleged breach of the permanent mortgage modification agreement. See, e.g., Sutcliffe v. Wells Fargo Bank, N.A., 283 F.R.D. 533, 553 (N.D. Cal. 2012) (indicating "adverse credit consequences . . . would sufficiently allege damages to support [the p]laintiffs' breach of contract claim"); Newsome v. BAC Home Loans Servicing, LP, Nos. C 11-00423 SBA, C 09-5288 SBA, 2011 WL 2462315, at *2 (N.D. Cal. June 21, 2011) (denying motion to dismiss breach of contract claim for inadequate allegations concerning damages where the plaintiffs alleged they "incurred . . . late fees and other charges as a . . . result of [the d]efendant's alleged breach of their agreement").

For the stated reasons, Defendants' motion to dismiss Plaintiffs' breach of contract claim is DENIED.

**E. Promissory Estoppel Claim**

Defendants seek dismissal of Plaintiffs' promissory estoppel claim, arguing, *inter alia*:

> Plaintiffs admit that Bank of America's

14

> alleged promise to bring Plaintiffs' loan current was conditioned upon Plaintiffs 'entering into a new subordinate Note and Deed of Trust, among other requirements.' See Complt. [sic] ¶ 47. Where an alleged promise is . . . subject to further considerations, the "clear and unambiguous" requirement for promissory estoppel is not met.

(Defs.' Mot. 11:8-26.)

Plaintiffs do not address this argument in their opposition. Instead, Plaintiffs confirm that Defendants' alleged promise for a "permanent loan modification" was conditioned upon "agree[ing] to a subordinate loan and lien on their property." (Pls.' Opp'n 8:12-14 (citing Compl. ¶ 47).)

"Promissory estoppel is 'a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.'" Kajima/Ray Wilson v. L.A. Cnty. Metro. Transp. Auth., 23 Cal. 4th 305, 310 (2000) (quoting Raedeke v. Gibraltar Sav. & Loan Ass'n, 10 Cal.3d 665, 672 (1974)). "'The purpose of this doctrine is to make a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange. If the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for, the doctrine is inapplicable.'" Fontenot v. Wells Fargo Bank, N.A., 198 Cal. App. 4th 256, 275 (2011) (quoting Youngman v. Nev. Irrigation Dist., 70 Cal. 2d 240, 249 (1969)). "Accordingly, a plaintiff cannot state a claim for promissory estoppel when the promise was given in return for proper consideration. The claim instead must be pleaded as one for breach of the bargained-for contract." Id.

1 | Here, Plaintiffs allege Defendants' promise "that they
2 | would be brought current on their mortgage" was made "**in exchange**
3 | **for** entering into a new subordinate Note and Deed of Trust, among
4 | other requirements." (Compl. ¶ 47 (emphasis added).) Accordingly,
5 | the portion of Defendants' motion seeking dismissal of
6 | Plaintiffs' promissory estoppel claim is GRANTED. Further, since
7 | it appears Plaintiffs cannot allege any set of facts to support
8 | their promissory estoppel claim, granting leave to amend would be
9 | futile. Therefore, Plaintiffs' promissory estoppel claim is
10 | dismissed with prejudice.

## IV. CONCLUSION

For the stated reasons, Defendants' dismissal motion is denied, except as to the following claims, which are dismissed with prejudice:

1) California Consumer Credit Reporting Agencies Act claim, to the extent it is based upon violation of any section of the act, other than California Civil Code section 1785.25(a);

2) Promissory Estoppel claim.

Dated: October 25, 2013

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge