1   NOAH ZINNER, SBN 247581
    HOUSING AND ECONOMIC RIGHTS ADVOCATES
2   1814 Franklin Street, Ste. 1040
    Oakland, CA 94612
3   Telephone:    (510) 271-8443
    Facsimile:    (510) 868-4521
    Email:        nzinner@heraca.org
4
    DANIEL J. MULLIGAN, SBN 103129
5   JENKINS MULLIGAN & GABRIEL LLP
    10085 Carroll Canyon Road, Ste. 210
    San Diego, CA 92131
6   Telephone:    (415) 982-5000
    Facsimile:    (415) 982-8515
7   Email:        dan@jmglawoffices.com

8   ERIC ANDREW MERCER, SBN 248707
    LAW OFFICE OF ERIC ANDREW MERCER
9   770 L Street, Ste. 950
    Sacramento, CA 95814
    Telephone:    (916) 361-6022
10  Facsimile:    (916) 361-6023
    Email:        eric@ericmercerlaw.com

11  Attorneys for Plaintiffs ANTONIO and
    BEATRIZ ESQUIVEL; and the putative class.

12

13              UNITED STATES DISTRICT COURT

14          FOR THE EASTERN DISTRICT OF CALIFORNIA

15                  SACRAMENTO DIVISION

16

17  ANTONIO ESQUIVEL and BEATRIZ        Case No.  2:12-cv-02502-GEB-KJN
    ESQUIVEL, individually, and on behalf of all
18  others similarly situated, and on behalf of the    **PLAINTIFFS' REPLY TO DEFENDANTS'**
    general public,                                    **OPPOSITION TO MOTION FOR CLASS**
19                                                     **CERTIFICATION**
              Plaintiffs,
20                                      Date:      September 28, 2015
        vs.                             Time:      9:00 a.m.
21                                      Judge:     Hon. Garland E. Burrell, Jr.
                                        Dept.:     Courtroom 10, 13th Floor
22  BANK OF AMERICA, N.A.; BANK OF
    AMERICA CORPORATION; and DOES 1
23  through 100 inclusive

24            Defendants.

25

26

27

28

1

## TABLE OF CONTENTS

2  I.    Introduction .......................................................................................................... 1

3  II.   Law and Argument ............................................................................................... 3

4        A.    Plaintiffs and the Purported Class Members Have Standing Under Article III. ...... 3

5              1.    Members of the Prospective Class Each Suffered An Actual, Concrete, and
                     Particularized Injury .......................................................................... 3
6
7              2.    Plaintiffs Have Article III Standing Because Their CCRAA and Rosenthal
                     Act Claims Establish a Statutory Right to Relief .................................. 4

8        B.    The Proposed Class Meets the Requirements of Rule 23(a) ................................... 7

9              1.    The Class is Numerous. ....................................................................... 7

10             2.    The Class is Ascertainable. ................................................................. 7

11             3.    The Existence and Enforceability of the Bank's Uniform "Commitment
                     and Offer" Letter Presents Common Issues of Law and Fact. ..................... 8
12
13                   a.    The Cases Cited by Bank of America Are Inapposite to the
                           Narrowly Defined Class in the Present Action. .......................... 10

14                   b.    Bank of America's Technical Objections Regarding Contract
                           Formation Are (1) Merits-Based and Therefore Premature and (2)
15                         in Any Event, Are Common to the Class. .................................. 12

16                         i.     "No Counter-Signature" and Statute of Frauds. ................ 13

17                         ii.    Conditions ................................................................. 14

18                         iii.   Different Contract Forms. .............................................. 15

19             4.    Plaintiffs' Claims Are Typical of Those of the Class. ............................ 16

20             5.    Plaintiffs Adequately Represent the Class. ........................................... 17

21             6.    The Proposed Class Meets the Requirements of Rule 23(b)(3) Because
                     Common Issues Predominate and a Class Action Is Superior to Other
22                   Available Methods for Fairly and Efficiently Adjudicating the Controversy.
                     ....................................................................................................... 19
23
24 III.   Conclusion ....................................................................................................... 20

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Federal Cases**                                                                           **Page(s)**

3

*Blackie v. Barrack,*
   524 F. 2d 891 (9th Cir. 1975) ............................................................................ 20

4

*Burton v. Nationstar Mortg., LLC,*
5
   2014 U.S. Dist. LEXIS 144137 (E.D. Cal. Oct. 8, 2014) ..................................... 6, 11, 12

6

*Campusano v. BAC Loans Servicing LP,*
   2013 Dist. LEXIS 76148 (C.D. Calif. Apr. 29, 2013) ...................................... 10, 11, 15
7

8

*Cantrell v. City of Long Beach,*
   241 F.3d 674 (9th Cir. Cal. 2001) ....................................................................... 4

9

*Comcast Corp. v. Behrend,*
   133 S. Ct. 1426 (U.S. 2013) ............................................................................... 20
10

11

*Corvello v. Wells Fargo Bank, NA,*
   728 F.3d 878 (9th Cir. 2013) .............................................................................. 14

12

*Darrin v. Bank of Am., N.A.,*
   2013 U.S. Dist. LEXIS 31941 (E.D. Cal. Mar. 6, 2013) ...................................... 5
13

14

*Edwards v. First Am. Corp.,*
   2015 U.S. App. LEXIS 14841 (9th Cir. Cal. Aug. 24, 2015) ............................... 12

15

*Frlekin v. Apple Inc.,*
   2015 U.S. Dist. LEXIS 92768 (N.D. Cal. July 16, 2015) .................................... 20
16

17

*Gaudin v. Saxon Mortg. Servs.,*
   297 F.R.D. 417 (N.D. Cal. 2013) .................................................................. 10, 13, 17

18

*Gonzales v. Arrow Financial Services, LLC,*
   660 F.3d 1055  (9th Cir. 2011) ........................................................................ 5, 19
19

20

*In re Tableware Antitrust Litigation,*
   241 F.R.D. 644 (N.D. Cal. 2007) ....................................................................... 7

21

*Leyva v. Medline Indus.,*
   716 F.3d 510 (9th Cir. Cal. 2013) ...................................................................... 20
22

23

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (U.S. 1992) .................................................................................. 4, 5

24

*Mazza v. Am. Honda Motor Co.,*
   666 F.3d 581 (9th Cir. 2012) ............................................................................. 6, 9
25

26

*O'Connor v. Boeing North American, Inc.,*
   184 F.R.D. 311 (C.D. Cal. 1998) ....................................................................... 7

27

*Parker v. Bank of America, N.A.,*
   2015 WL 1737278 (D.D.C. Apr. 16, 2015) ......................................................... 11, 12
28

1

**TABLE OF AUTHORITIES CONTINUED**

2

**Federal Cases (cont'd)**                                                      **Page(s)**

3

*Parrish v. NFL Players Ass'n & NFL Players Inc.*,

4

   2008 U.S. Dist. LEXIS 120158 (N.D. Cal. Apr. 29, 2008) ............................... 19

5

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ................................................................... 10

6

*Schlegel v. Wells Fargo Bank, NA*,

7

   720 F.3d 1204 (9th Cir. 2013) .................................................................. 6

8

*Serrano v. Sterling Testing Sys., Inc.*,
   711 F. Supp. 2d 402 (E.D. Pa. 2010) ...................................................... 19

9

*Stearns v. Ticketmaster Corp.*,

10

   655 F.3d 1013 (9th Cir. Cal. 2011) ....................................................... 5, 6

11

*Stockwell v. City & County of San Francisco*,
   749 F.3d 1107 (9th Cir. 2014) ................................................................ 12

12

*Surowitz v. Hilton Hotels Corp.*,

13

   383 U.S. 363 (1966) ......................................................................... 17, 18

14

*Sutherland v. Urban Partnership Bank*,
   2012 U.S. Dist. LEXIS 21201 (N.D. Ill. Feb. 21, 2012) ........................ 14, 15

15

*Taylor v. FedEx Freight, Inc.*,

16

   2015 U.S. Dist. LEXIS 64177 (E.D. Cal. May 15, 2015) .......................... 20

17

*Tourgeman v. Collins Fin. Servs.*,
   755 F.3d 1109 (9th Cir. 2014) ............................................................. 4, 5

18

*Wal-Mart Stores, Inc. v. Dukes*,

19

   131 S. Ct. 2541 (2011) ......................................................................... 20

20

**California Cases**

21

*Barroso v. Ocwen Loan Servicing, LLC*,
   208 Cal. App. 4th 1001 (Cal. App. 2d Dist. 2012) ................................ 13, 15

22

*Chavez v. Indymac Mortgage Services*,

23

   219 Cal. App. 4th 1052 (Cal. App. 4th Dist. 2013) ................................. 14

24

*Frankel v. Board of Dental Examiners*,
   46 Cal. App. 4th 534 (1996) .................................................................. 15

25

**Federal Statutes**

26

15 U.S.C. § 1692 ........................................................................................ 5

27

15 U.S.C. § 1692k(a)(2)(B) ......................................................................... 5

28

1

**TABLE OF AUTHORITIES CONTINUED**

2

**California Statutes** **Page(s)**

3

Cal. Bus. & Prof. Code § 17200 ........................................................................... 5, 6

4

Cal. Civ. Code § 1434..................................................................................... 14

5

Cal. Civ. Code § 1785.1 ............................................................................. passim

6

Cal. Civ. Code § 1785.25(a) ............................................................................ 2

7

Cal. Civ. Code § 1785.31(a)(1)(2) ...................................................................... 5

8

Cal. Civ. Code § 1788......................................................................... passim

9

Cal. Civ. Code § 1788.17................................................................................ 4

10

Cal. Civ. Code §1785.31................................................................................. 2

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    **INTRODUCTION**

This is an important class action to vindicate the rights of borrowers whom Bank of America continued to treat as delinquent in collections and continued to report to credit bureaus as delinquent – *after* the borrowers had already signed and returned the Bank's permanent loan modification documentation and had already received "QC passes" from the Bank's vendors. The Bank's expert, David Skanderson, reports that after the vendors "QC'ed" the borrowers' modification agreements, the Bank went ahead and recorded subordinate FHA liens for *6801 borrowers*, and never implemented modifications for nearly half of these.

This Class of approximately 7,000 borrowers, who did everything the Bank asked of them, and against whose homes the Bank recorded the liens, should have their day in court on their claims that the Bank violated California's fair debt and fair credit reporting statutes by continuing to treat them as dead beats while the Bank implemented the modifications in its computer systems. Class certification is the only effective way these borrowers and homeowners can stand up to the Bank.

This Reply will confirm that the Class should be certified so the Bank's practices will be exposed to daylight in this Court. This Court should not allow the Bank to bury its collection and credit reporting practices under cover of the Bank's misguided technical and legal arguments to forestall a Class from ever being certified—preventing the Bank from ever being called to account.

The Bank's Opposition consists largely of merits arguments (*e.g.,* contract defenses) that are irrelevant to this procedural motion for class certification. The Bank should save its merits defenses for trial.

The Bank writes at length about Article III standing issues, but fails to address the claims Plaintiffs are actually making. Plaintiffs have pled that Bank of America has a practice of punishing borrowers for the Bank's own delays, by continuing to subject them to wrongful collection and credit reporting as if no modification existed. This inexplicable conduct by the Bank violated the putative class's statutory rights to be free from wrongful and inaccurate collection and credit reporting under the Rosenthal Fair Debt Collections Practices Act

1  (Rosenthal Act) (Cal. Civil Code §§1788, *et seq.*) and the Consumer Credit Reporting Agencies

2  Act (CCRAA) (Cal. Civil Code §1785.25(a), §1785.31).

3         The Class claims for statutory damages under the CCRAA and the Rosenthal Act establish

4  class-wide standing. Class-wide injury is also established by the Bank's class-wide practice of

5  recording subordinate liens shortly after the vendors issued "QC passes," while continuing to treat

6  borrowers as delinquent until it implemented the modifications, regardless of whether the Bank

7  *ever* completed its "implementation process" and regardless of the speed, or lack thereof, of the

8  Bank's processes for doing so.

9         The Bank focuses much of its Opposition on its claim that the delays in implementing

10  permanent FHA HAMP modifications for the putative class were short, justifiable, and harmless.

11  (*See* Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Opp."), ECF No. 88,

12  at 3:9-6:2; Opp. at 4:25 ("[L]oans do not modify themselves"); Opp. at 10:10-12:21). This

13  rhetorical sleight of hand, focuses on the time between *the recordation of the subordinate lien* and

14  implementation of the modification (*See, e.g.,* Opp. at 9:15-16 ("Half the borrowers who received

15  FHA HAMP modifications had them implemented within two days of *the recording of the HUD*

16  *lien.*") (emphasis added)), which is entirely irrelevant to Plaintiffs' claims.

17         The relevant time period, to the contrary, is the time between class members' *acceptance*

18  *and return of the FHA HAMP modification agreements* and the Bank's implementation of their

19  modifications.

20         More to the point is that, whatever the period of delay, "what is being challenged here is"

21  not delay as such, but "*the Bank's continued debt collection and adverse credit reporting, as*

22  *though the loans had not been modified, after borrowers had already accepted the bank's terms*

23  *by signing and returning the bank's required documentation.*"  (Motion for Class Certification

24  ("MCC"), ECF No. 83, at 2:16-20 (emphasis added)).

25         The issues presented by Plaintiffs are ripe for adjudication on a class wide basis.

26

27

28

## II.   LAW AND ARGUMENT

### A.   Plaintiffs and the Purported Class Members Have Standing Under Article III.

Plaintiffs and the putative class members have Article III standing because they, by definition, have each suffered injury in the form of an FHA lien recorded and clouding title against their home. In addition, the statutes giving rise to their claims, the CCRAA and Rosenthal Act, with corresponding statutory rights to be free from wrongful credit reporting and debt collection, are sufficient to establish Article III standing under relevant case law.

### 1.   Members of the Prospective Class Each Suffered An Actual, Concrete, and Particularized Injury.

Defendant argues that Plaintiffs' proposed class necessarily includes members who cannot show damages because "2,500+ borrowers who had their loan modifications implemented within two weeks of the recording of the lien are still asserted to belong to the class" and because "[b]orrowers who had their loan modifications implemented *before* the recording of the lien are still included within the class." (Opp. at 10:26-11:1). However, according to Bank of America, the amount of time between borrowers' verified return of their FHA HAMP modification documents, per the Bank's QC Pass protocol, and the implementation of their modifications is approximately 45 days, and in the Plaintiffs' case far longer. (MCC at 11:13-18).

Regardless, Plaintiffs do not argue that Bank of America was obligated to implement the modifications within some specified period of time. Plaintiffs simply claim that they should not have been treated as delinquent in credit reporting and collection during the implementation delay, after they returned a modification according to Bank of America's own requirements. That there was a delay, even if it were a necessary one, between the time that a borrower returned a properly executed modification agreement to Bank of America and the time when Bank of America implemented the modification does not invalidate Plaintiffs' claims; it defines them.

Each class member, by definition, had an FHA lien recorded against their home as a result of returning the modification agreement. The only legal basis for the lien was the same modification agreement that Bank of America ignored with respect to credit reporting and

1  collection. This Court has already held that this fact was sufficient to show that Plaintiffs suffered

2  injury. (Order on Defendant's Dismissal Motion ("Order on MTD"), ECF 048, 10:7-10).

3                    2.    **Plaintiffs Have Article III Standing Because Their CCRAA and**
                          **Rosenthal Act Claims Establish a Statutory Right to Relief.**
4

5        Plaintiffs and the putative class also have Article III standing because Bank of America's

6  violations of both the CCRAA and the Rosenthal Act establish statutory rights. "[N]othing in this

7  contradicts the principle that "the . . . injury required by Art. III may exist solely by virtue of

8  statutes creating legal rights, the invasion of which creates standing.'" *Lujan v. Defenders of*

9  *Wildlife, 504 U.S. 555,* 578 (U.S. 1992).

10       The Ninth Circuit has held that the violation of a state-created legal right can, in itself,

11  satisfy the injury in fact requirement for standing under Article III. *Cantrell v. City of Long*

12  *Beach*, 241 F.3d 674, 684 (9th Cir. Cal. 2001) ("We agree with the Seventh Circuit that state law

13  can create interests that support standing in federal courts."). In *Tourgeman v. Collins Fin. Servs.*,

14  755 F.3d 1109, 1114 (9th Cir. 2014), a defendant debt collector argued that a Plaintiff could not

15  establish Article III standing for a class of debtors who were subjected to unlawful debt collection

16  because the class encompassed borrowers, including the named plaintiff, who never received the

17  actionable debt collection correspondence. The Ninth Circuit held that the plaintiff established

18  Article III standing regardless of whether putative class members actually received wrongful debt

19  collection notices because the injury the plaintiff claimed to have suffered was "the violation of

20  his right not to be the target of misleading debt collection communications. The alleged violation

21  of this statutory right…constitutes a cognizable injury under Article III." *Id*. at 1116. Similarly, in

22  the instant case, Plaintiffs have alleged that Bank of America violated class members' statutory

23  right to be free from wrongful debt collection and credit reporting under the Rosenthal Act and

24  CCRAA.

25       This Court has held that Plaintiffs may assert their Rosenthal Act rights against Bank of

26  America. (Order on MTD, at 6:2-8:15). Under the Rosenthal Act, Plaintiffs have a right to actual

27  damages and, in the case of a class action, the Class has a right to class-wide statutory damages

28  up to $500,000. Civ. Code § 1788.17 (incorporating the remedies available under 15 U.S.C. §

1  1692k(a)(2)(B)); *see also Gonzales v. Arrow Financial Services, LLC*, 660 F.3d 1055, 1065-1068

2  (9th Cir. 2011) (1999 addition of § 1788.17 was intended to, and did, incorporate the class action

3  remedy under the federal Fair Debt Collection Act into the Rosenthal Act).

4         This Court has also held that Plaintiffs may assert their CCRAA rights against Bank of

5  America. (Order on MTD, at 12:4-13); *see also Darrin v. Bank of Am., N.A.*, 2013 U.S. Dist.

6  LEXIS 31941, *12 (E.D. Cal. Mar. 6, 2013) (denying Bank of America's Motion to Dismiss

7  mortgage borrower's claim under the CCRAA). Under the CCRAA, Plaintiffs not only have a

8  right to actual damages but also, in the case of willful violations, to statutory damages in amounts

9  set by the Court. Civ. Code § 1785.31(a)(1)(2) ("up to $5,000 per plaintiff); subd. (c) ("in the case

10  of a class action, in an amount that the court may allow" based on "the amount of any actual

11  damages awarded, the frequency of the violations, the resources of the violator and the number of

12  persons adversely affected" ).

13         Statutory damages do not require a showing of injury to all class members. *Tourgeman*,

14  755 F.3d at 1117-1118; *Gonzales*, 660 F.3d at 1068 (statutory damages are not tied in any way to

15  actual losses suffered).

16         Furthermore, the Ninth Circuit has held under *Lujan,* where state law empowers the

17  named plaintiff to sue for class-wide relief without any requirement of injury to all class

18  members, Article III standing is established even though only the named plaintiff has suffered

19  actual injury. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. Cal. 2011). In *Stearns*,

20  the Defendant argued that if under the California's Unfair Competition Law ("UCL"), class

21  members need not show any proof of causation or injury, the Court should hold that the class

22  lacked Article III standing. *Id.* The Court disagreed:

23         "On the contrary, our law keys on the representative party, not all of the class
           members, and has done so for many years." In *Casey v. Lewis*, 4 F.3d 1516 (9th
24         Cir. 1993), we declared that:

25         At least one named plaintiff must satisfy the actual injury component of standing in
           order to seek relief on behalf of himself or the class. The inquiry is whether any
26         named plaintiff has demonstrated that he has sustained or is imminently in danger
           of sustaining a direct injury as the result of the challenged conduct…" *Id.* (internal
27         citation omitted).

28

1    *Stearns*, 655 F.3d at 1021. This Court has already held her that Plaintiffs suffered injury through

2    the FHA lien on their home.

3          Defendant cites dicta in *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 594 (9th Cir.

4    2012) for the proposition that "'[n]o class may be certified that contains members lacking Article

5    III standing.'" *Id*. In *Mazza*, however, the Court upheld denial of class certification on other

6    grounds only after finding that the named plaintiff *had established standing* under the UCL (as in

7    *Stearns*). *Id.* at 595. ("Honda's objection "that state law gives a right to 'monetary relief to a

8    citizen suing under it' without a more particularized proof of injury and causation . . . is not

9    enough to preclude class standing.")  *Mazza*, therefore, has little relevance to the case at bar.

10         The *Stearns-Mazza* principle, that a state law giving a plaintiff the right to sue without

11   showing class-wide injury is sufficient to confer class standing, applies equally to statutory

12   damages under the Rosenthal Act and the CCRAA.

13         In *Burton v. Nationstar Mortg*., LLC, 2014 U.S. Dist. LEXIS 144137 (E.D. Cal. Oct. 8,

14   2014), report and recommendation adopted, 2014 U.S. Dist. LEXIS 155014 (E.D. Cal., Oct. 30,

15   2014), the Court denied certification to a class of mortgage borrowers who had entered into

16   permanent modifications with a mortgage servicer. The putative class members included those

17   whose modifications were not implemented by the later of the effective date of the modification

18   or the date of the mortgage servicer's execution of the agreement. *Id*. at *9.

19         However, the plaintiff in *Burton* brought no claims based on statutory rights such as those

20   available under the CCRAA and the Rosenthal Act. *Id*. at *8-9. Nor did the *Burton* plaintiff allege

21   that Nationstar had recorded liens against class members' homes in connection with the

22   modifications. Furthermore, Nationstar presented evidence that it treated borrowers who had

23   signed and returned permanent modifications as if the modifications were effective, regardless of

24   whether they had been implemented. *Id.* at *19. Bank of America's conduct in the instant case

25   was precisely the opposite. Here, Bank of America continued to treat borrowers as delinquent

26   until eventually implementing their modifications.

27         Bank of America's argument that retroactive modification obviates damages also is

28   unfounded. *See, e.g. Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1211 (9th Cir. 2013).

**B.     The Proposed Class Meets the Requirements of Rule 23(a)**

1.     **The Class is Numerous.**

Bank of America does not dispute numerosity. Its "Expert Report of David Skanderson, Ph.D" ("Skanderson Report"), submitted with its Opposition, identifies 6,801 California loans where an FHA lien has been recorded, *including 3,304 with no modification implementation date at all*. Declaration of Alyssa Sussman in Support of Opp. ("Sussman Decl."), ECF No. 88-1, Ex 1, p. 11.

2.     **The Class is Ascertainable.**

The purpose of the ascertainably requirement is to allow identification of persons who may be entitled to relief and class notice and will be bound by the judgment.  *In re Tableware Antitrust Litigation*, 241 F.R.D. 644, 650 (N.D. Cal. 2007).  Ascertainability requires only that the class description be sufficiently definite that it is administratively feasible for the court to ascertain whether an individual is a member. *Id.*  (citing *O'Connor v. Boeing North American, Inc*. 184 F.R.D. 311, 319 (C.D. Cal. 1998)).

Ascertainability does not require Plaintiffs seeking class certification to establish the provability of damages. *Id.* These considerations are "appropriately presented in a motion for summary judgment or directed verdict, not one for class certification." *Id.*

Plaintiffs' proposed class definition is objective, definite, and, as Defendant itself demonstrates in its Opposition, administratively feasible for the Court to ascertain:

Bank of America can identify "California borrowers who signed and returned Bank of America's offer of a permanent FHA HAMP modification" through vendor reporting on whether a borrower returned FHA HAMP modification documents that received a "QC Pass." (MCC at 5:19-6:3). Once a file received a "QC Pass," the Bank felt entitled to exercise its own modification rights against the putative class by initiating recordation of FHA liens against their homes. (*Id*. at p.6:10-12); (Sussman Decl., Exihibit 2, 47:25-48:1-4) (Bank of America authorizes its vendor to execute and send the FHA lien to the respective California county for recording "as soon as the QC Pass is achieved"). Additionally, upon a QC Pass, Bank of America's vendor uploads the signed modification documents to Bank of America's iPortal system. (MCC at 6:10-

12). Plaintiffs propose that the QC Pass may therefore serve as class-wide proof of class member return of documents according to instruction.

Bank of America can also identify accounts where it recorded an FHA lien against class members' homes pursuant to an FHA HAMP modification. The Skanderson Report states that Bank of America provided two separate data files listing FHA liens recorded in California between January 26, 2010 and March 10, 2015. (Sussman Decl., Ex. 1 at 7). It also states that individual borrower accounts correlating to the FHA liens were identified in the data files by loan number. *Id*. Finally, Skanderson states that he is able to isolate, through the "WOTypeDesc" fields provided in the data Bank of America provided to him, the account number of loans modified under the FHA HAMP program. *Id*. at 8.

It is clearly administratively feasible to ascertain class members by matching the accounts where borrowers returned a completed FHA HAMP loan modification agreement resulting in a QC Pass to the accounts where Bank of America recorded an FHA lien pursuant to the modification. Plaintiffs' proposed class is, therefore, objectively ascertainable.

3. **The Existence and Enforceability of the Bank's Uniform "Commitment and Offer" Letter Presents Common Issues of Law and Fact.**

Whether the Bank entered enforceable contracts with the entire Class is an issue common to the Class and provides the necessary "glue" for class certification. The Bank does not dispute that the form "Commitment and Offer to Modify Mortgage and for Partial Claim" the Bank sent to the named Plaintiffs was sent to the entire Class.   This Commitment was a binding offer by the Bank to modify the loans once the recipients signed and returned the modification agreements:

- "This letter constitutes a commitment and offer to modify the Mortgage (identified above) and to process a Partial Claim."

- "*This Commitment permits you to accept our offer* to modify the Mortgage and to process the Partial Claim."

- "If you want to accept this Commitment, you must sign as indicated below and deliver the signed Commitment to Bank of America, N.A. at the address listed below, by March 16, 2013, along with the documents described in and included with this Commitment.  Failure to

1    do so will result in the automatic *withdrawal by Bank of America, N.A. of this Commitment*

2    without further notice.”

3    (Declaration of Noah Zinner in support of MCC (Zinner Decl.), Ex. 1 (emphasis added)).

4          The signature page of the form states:

5          •      “*We accept* all of the terms and conditions stated in the Commitment.”

6          •      “All representations made by us pursuant to the Program and Commitment are true

7    and correct and have been and will be relied upon to Bank of America, N. A., and *any breach of*

8    *the representations will give Bank of America, N.A. the right to terminate this Commitment* and

9    could result in the pursuit of other rights and remedies by Bank of America, N.A.

10         •      “As evidenced by the signature below, the Borrower(s) *and the Lender* agree to the

11   foregoing: [signature block for borrowers only, none for the Bank].”

12   (*Id.* (emphasis added)).

13         The Bank now claims that this “Commitment and Offer” was not a commitment to do or

14   offer anything, but simply a sign-up sheet to be put in a queue for the Bank’s loan modification

15   processing. However, the plain language of the Bank’s Commitment and Offer letter refutes this

16   claim and establishes that the Bank made uniform offers of permanent loan modifications to the

17   entire Class. These offers became effective by their terms once the borrowers complied by

18   signing and returning them and all required documents within the time frame the offer specified.

19         Under the Class definition, all Class members did so, evidenced by a “QC Pass” from the

20   Bank’s vendor. Therefore, all members of the defined Class accepted the Bank’s Commitment

21   and Offer.

22         This establishes the existence of a common question of contract formation under Rule 23:

23         So long as there is ‘even a single common question,’ a would-be class can satisfy
24         the commonality requirement of Rule 23(a)(2).” *Wang*, 737 F.3d at 544 (quoting
           *Wal–Mart*, 131 S.Ct. at 2556); *see also Mazza v. Am. Honda Motor Co., Inc.*, 666
25         F.3d 581, 589 (9th Cir.2012) (noting that “commonality only requires a single
           significant question of law or fact”). Thus, “[w]here the circumstances of each
26         particular class member vary but retain a common core of factual or legal issues
           with the rest of the class, commonality exists.” *Evon v. Law Offices of Sidney*
27         *Mickell*, 688 F.3d 1015, 1029 (9th Cir.2012) (quotation marks and citation
           omitted).
28

1   *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014).

2          The common core of factual and legal issues central to the validity of each one of the

3   Class members' claims is whether borrowers who signed and returned their Commitment and

4   Offer letters and received a "QC pass" had a binding contract with the Bank. If so, their common

5   claim is that the Bank was legally obligated to cease delinquency collection and adverse credit

6   reporting under the prior, unmodified loan terms. Bank of America failed to meet these legal

7   obligations after borrowers received a "QC pass," and instead continued to wrongfully collect and

8   report borrowers until, if ever, the Bank implemented the modifications in its AS 400 system.

9   These questions are common to the entire Class as defined.

10   **a.     The Cases Cited by Bank of America Are Inapposite to the Narrowly Defined Class**
11   **in the Present Action.**

12          The present action is much more like a case where the Court granted certification of a

13   class of borrowers "who entered into HAMP TPPs [trial payment plans, as opposed to approved

14   permanent modifications] with Saxon effective on or before October 1, 2009, and made at least

15   three trial period payments, but did not receive HAMP loan modifications." *Gaudin v. Saxon*

16   *Mortg. Servs.*, 297 F.R.D. 417, 431 (N.D. Cal. 2013).

17          The *Gaudin* Court found predominant common questions of law and fact concerning the

18   nature and scope of the TPP.  *Id.* at 425.  Among these questions were the following:

19          (1) "Saxon's uniform practices, including its admission that it did not consider the
20          TPP legally binding";

21          (2) whether the TPP is an enforceable contract, once it has been fully executed;
            and if it became binding when executed, "whether the Class may recover some or
            all of their trial payments, nominal damages, or any other remedies under
22          California law", and, with respect to Plaintiffs' UCL claim, "whether the public
            would likely be deceived."
23

24   *Id.* (internal citations removed).

25          The cases cited by Bank of America are readily distinguished from the case at bar. For

26   instance, in *Campusano v. BAC Loans Servicing LP*, 2013 Dist. LEXIS 76148, *17-21 (C.D.

27   Calif. Apr. 29, 2013), plaintiffs sought certification of a nationwide class of borrowers whose

28   modification agreements were allegedly breached. Defendant argued that this required the Court

1   to find uniformity not only in the laws of 50 States pertaining to contract formation, but also

2   across the terms of a "vast" variety of different modification agreements. *Id*. at *21. The Court

3   ruled that issues regarding contract formation, such as whether the borrowers had signed the

4   agreements and whether the agreements had become "effective," precluded a finding of

5   commonality. *Id*. at *15. *See also id.* at *17 ("Plaintiffs have made little effort to satisfy their

6   burden to show that the laws of all fifty states would resolve this legal question in a similar

7   manner.")

8          Here, unlike *Campusano*, the permanent modification commitment letter and associated

9   documents the Bank sent to the entire Class to sign are substantially identical. The Bank fails to

10  identify any material difference in the permanent modification documentation sent to the Class

11  that could affect a class-wide decision on the common issue whether binding contracts were

12  formed, or that would materially impair the cohesion of the Class or the manageability of class-

13  wide adjudication

14         In addition to *Campusano*, the Bank places heavy reliance on two other cases in which

15  classes involving denials of HAMP permanent loan modifications: *Burton v. Nationstar*

16  *Mortgage, LLC*, *supra*, and *Parker v. Bank of America, N.A.,* 2015 WL 1737278 (D.D.C. Apr. 16,

17  2015).

18         Both *Burton* (discussed supra) and *Parker* were nationwide cases based on breach of

19  contract claims. The courts did not mention or analyze any claims for statutory damages, which

20  support class-wide standing in this case. In both cases, the courts noted wide variations in

21  permanent loan modification forms under HAMP programs, as well as variations in contract law

22  over the 50 states. These variations, together with the absence of class-wide harm, were central to

23  the decisions to deny certification.

24         By contrast, here plaintiffs are seeking to certify a narrow, California-only class based on

25  California statutory rights. Their claims are limited to a single, cohesive loan modification

26  program, FHA-HAMP, where the Bank took immediate advantage of the Class members'

27  signatures on their loan modification packages by recording FHA liens against their homes.

28  Plaintiffs have shown viable class-wide claims based on the uniformity of FHA-HAMP

1  documentation and the contract formation principles of a single state's contract law. Plaintiffs

2  have shown contract acceptance by the Bank and class-wide harm through the recording of FHA

3  liens. Because of the liens, plaintiffs' contract law claims factually and legally far stronger and

4  more uniform than those in *Burton* and *Parker*. And plaintiffs have established a firm basis for

5  class-wide standing through their claims for statutory damages.

6          **b.    Bank of America's Technical Objections Regarding Contract
                    Formation Are (1) Merits-Based and Therefore Premature and (2) in
7                   Any Event, Are Common to the Class.**

8          To avoid the clear import of its Commitment and Offer, the Bank ventures a laundry list

9  of technical objections to contract formation. It is premature for the Court to consider these

10 objections, which, in any case, lack merit.

11         In  *Stockwell v. City & County of San Francisco*, 749 F.3d 1107, 1113-14 (9th Cir. 2014),

12 the Court of Appeal held that the District Court erred in denying class certification because of its

13 legal error in evaluating merits questions, rather than focusing on whether the questions

14 presented, whether meritorious or not, were common to the members of the putative class. The

15 Court stated:

16         While some evaluation of the merits frequently "cannot be helped" in evaluating
           commonality, *id.*, that likelihood of overlap with the merits is "no license to
17         engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v.
           Conn. Ret. Plans & Trust Funds*, —— U.S. ——, 133 S.Ct. 1184, 1194–95, 185
18         L.Ed.2d 308 (2013). Instead, as the Supreme Court clarified last year, "[m]erits
19         questions may be considered to the extent—but only to the extent—that they are
           relevant to determining whether the Rule 23 prerequisites for class certification are
20         satisfied." Id. at 1195 (emphasis added). "[W]hether class members could actually
           prevail on the merits of their claims" is not a proper inquiry in determining the
21         preliminary question "whether common questions exist." *Ellis v. Costco Wholesale
           Corp.*, 657 F.3d 970, 983 n. 8 (9th Cir. 2011).
22

23 *Id.* at 1111-12; see also *Edwards v. First Am. Corp.,* 2015 U.S. App. LEXIS 14841, *9 (9th Cir.

24 Cal. Aug. 24, 2015) (citing *Stockwell* and declining to address merits issues).

25         Here, the Bank is improperly inviting the Court to deny class certification on merits

26 grounds.  For the Court to accept this invitation would be to duplicate the same error the Ninth

27 Circuit found in *Stockwell*.  Plaintiffs nevertheless briefly address these merits issue below.

28

### i.   "No Counter-Signature" and Statute of Frauds

Bank of America makes two related arguments regarding its own failure to sign class members' FHA HAMP modification agreements, both of which have been rejected by the California Court of Appeals under controlling authority that Bank of America fails to disclosure or address.

First, Bank of America argues that there was no enforceable contract until Bank of America executed the agreement. (Opp. at 22). In rejecting this argument as applied to HAMP agreements, the California Court of Appeals stated, "… the failure to return an executed copy of the agreement in the circumstances of this case could not act as a condition precedent precluding formation of a binding modification agreement…[because such a result] would violate … fundamental principles of contract interpretation." *Barroso v. Ocwen Loan Servicing, LLC*, 208 Cal. App. 4th 1001, 1012-1013 (Cal. App. 2d Dist. 2012).

There, as here, under that interpretation, "[Bank of America] would have sole control over the formation of the contract despite [Plaintiff's] full performance, simply by refusing to return a signed copy to [them]." *Id*. Further, Bank of America's own actions evidence that Bank of America's countersignature is not a condition precedent, which is confirmed by the Bank's standard practice of initiating the recordation the FHA liens as soon as outside vendors gave the borrowers' documents a "QC Pass."

In fact, this is a common class-wide issue. As the Court in *Gaudin* concluded, "Saxon's uniform practices, including its admission that it did not consider the TPP legally binding" was a common issue. Likewise, the Bank's argument that the modification agreements were not legally binding without a counter-signature is common to the Class.

Second, Bank of America argues that the statute of frauds bars a breach of contract claim. (Opp. at 22-23, 26-27). In rejecting this argument, the California Court of Appeals states that because "…[Plaintiff] incurred additional costs and fees in excess of the amounts she had been obligated to pay under her original loan agreement…," Plaintiff suffered a "…detrimental change in position [that] is sufficient to allege that Defendants should be estopped from asserting the statute of frauds." *Chavez v. Indymac Mortgage Services,* 219 Cal. App. 4th 1052, 1062 (Cal.

1    App. 4th Dist. 2013). The Ninth Circuit has also rejected a similar statute of frauds argument with

2    regard to a HAMP agreement. *See Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 885 (9th Cir.

3    2013).

4         Again, this is a class-wide issue. All Class members by definition suffered detrimental

5    reliance by signing FHA liens that enabled the Bank to process its Partial Claims to receive

6    compensation on the mortgages from HUD. The Bank's Commitment and Offer letter induced

7    Class members to sign these FHA liens, which encumbered their home titles, in reliance on the

8    promise of a permanent loan modification.

9                        **ii.    Conditions**

10        Next, the Bank argues that various conditions on the loan modifications destroy

11   commonality.  (Opp. at 16-17). Section "D" of the Commitment and Offer letter lists only three

12   conditions: (i) execution and return of the modification documents, (ii) continuing qualification

13   for the FHA-HAMP program, and (iii) title verification.

14        There were, clearly, other promises and commitments by the borrowers, in the

15   Commitment and Offer and other loan modification documents as well. (Opp. at 17). However,

16   none of these additional conditions and promises affect whether a binding contract was formed.

17   Instead, they were conditions on the Bank's duties to perform after the contract was made. Cal.

18   Civ. Code § 1434 ("An obligation is conditional, when the rights or duties of any party thereto

19   depend upon the occurrence of an uncertain event").

20        The existence of conditions at best relates to the issue of predominance, not commonality.

21   However, the conditions do not defeat predominance for several reasons:

22        First, the Bank's Commitment and Offer to modify the loans was itself sufficient to

23   require the Bank to stop collection activity and credit reporting as though the then-existing

24   mortgages remained unchanged because the Bank's Commitment materially changed the

25   borrowers' duties to pay their existing mortgages and the record of their creditworthiness.

26        This point was made in *Sutherland v. Urban Partnership Bank*, 2012 U.S. Dist. LEXIS

27   21201, *4 (N.D. Ill. Feb. 21, 2012), where the Court denied the lender's motion to dismiss

28   plaintiff's credit reporting claims where the lender continued to report loans as delinquent in the

face of ongoing loan modification negotiations. The Court rejected the lender's argument that the modifications were not yet effective because they had to be agreed to in writing:

> Sutherland is not seeking to enforce, under state law, the terms of the loan modification — he is seeking damages based on Urban's failure to abide by its duties under the Fair Credit Reporting Act. One of the alleged failures of duty arises from the incomplete information furnished by Urban, namely, that there were ongoing negotiations to extend or modify the loan, and previous extensions had been successfully entered into with Sutherland in the past. Therefore, the Credit Agreement Act does not bar Sutherland from contesting the accuracy or proper reporting of Urban's "delinquent" status.

*Id.* at *14.

Second, there is a class-wide issue whether the conditions the Bank cites were "conditions precedent" to the Bank's duty to modify the loans. "Conditions precedent" are disfavored; a court should not "construe a term of the contract so as to establish a condition precedent absent plain and unambiguous contract language to that effect." *Barroso*, 208 Cal. App. 4th at 1010 (quoting *Frankel v. Board of Dental Examiners*, 46 Cal. App. 4th 534, 550 (1996)).

In sum, the existence of conditions does not refute commonality and does not establish a lack of predominance.

### iii.   Different Contract Forms

The Bank acknowledges that this case is different from *Campusano*, where the plaintiffs sought class certification of modifications based on "trial plan" commitments across an extremely broad array of loan programs attempting to apply law from multiple jurisdictions. Here, the putative class is limited to borrowers who accepted offers of loan modifications under a single program, FHA-HAMP. (Opp. at 15:16-18).

The Bank nevertheless tries to analogize this case to *Campusano* by attaching two loan modification agreement forms (Sussman Decl. Ex. 15 & 16) that include slight differences from Plaintiffs' loan modification agreement (*Id.* at Ex. 14). The variations in the loan modification agreements are immaterial to commonality in this case.

First, there is no dispute that all Class Members signed and returned the Commitment and Offer letter and the loan modification documents sent with them, and that the vendors gave them

1  a "QC Pass." There is no dispute that the Bank recorded an FHA lien against the Class members'

2  homes. Thus, the existence of a contract between the Class members and the Bank remains

3  common to the entire Class.  The minor variations the Bank points out among the forms are

4  immaterial.

5      The requirement of "lender approval" in one of the forms is immaterial. For the reasons

6  already given in response to the Bank's "Statute of Frauds" arguments and its arguments based on

7  "conditions," the lender approval requirement in Exhibit 15 is not materially different from

8  Exhibits 14 and 16. The legal and factual analysis of whether the Bank had to sign is identical for

9  all of three forms.

10      Similarly, the requirement of Bankruptcy Court approval is a legal necessity in all cases

11  where the borrower has filed for bankruptcy, whether it is in the agreement or not. At best, this is

12  a merits issue affecting a small number of Class members. The Bank may show at trial which

13  borrowers' modifications failed for lack of Bankruptcy Court approval. The Court can tailor relief

14  appropriately at that time.

15      Similarly, the borrowers' promises to obtain flood insurance, to warrant against

16  "materially adverse physical conditions" and against other FHA-insured mortgages, and that their

17  income is sufficient to pay the modified loans, are distinctions without differences. These

18  promises have no bearing on the fundamental common issue — the formation of substantially

19  identical class-wide loan modification contracts. They are, at best, "conditions" and should be

20  treated as discussed above. Importantly, none of these additional commitments stopped the Bank

21  from recording FHA liens.

22          4.    **Plaintiffs' Claims Are Typical of Those of the Class.**

23      Defendant argues against typicality on the basis that class members will be subject to

24  unique defenses relating to whether they: (1) suffered any damages, and (2) an ambiguous

25  assertion that "[w]hether Plaintiffs can prove their claim depends on whether their delay in

26  properly executing the modification documents violated the conditions of the modification, such

27  that Bank of America was not contractually obligated to modify their loan until the issues were

28  resolved." (Opp. at 28).

1    The Bank's argument pertaining to damages is that Plaintiffs are atypical either because

2    they themselves cannot establish damages, or because they can establish damages, but many other

3    class members cannot. *Id*.  As discussed *supra*, each member of the putative class, by definition,

4    has suffered harm in the form of an FHA lien recorded against their property and to their statutory

5    rights under CCRAA and the Rosenthal Act.

6    The Bank's second argument appears to relate to the individual contract defenses

7    addressed in the preceding section. Again, Plaintiffs, like all putative class members, claim that

8    they had a binding agreement with Bank of America once they returned the FHA HAMP

9    modification agreement according to instructions and Bank of America initiated the recording of

10   an FHA lien against their home. That the Bank posits defenses to this claim does not destroy

11   typicality; it simply identifies merits-based issues for trial or on a Motion for Summary Judgment.

12   *See Gaudin*, 297 F.R.D. at 426. ("Defendant's argument is similar to the same arguments it

13   intends to raise in response to all Class Members: it will argue that, even after the TPP was signed

14   and countersigned, Defendant was still legally permitted to refuse to provide a loan modification

15   for various reasons. This defense does not defeat typicality.")

16                   5.    **Plaintiffs Adequately Represent the Class.**

17   Defendant challenges the adequacy of Plaintiffs Antonio and Beatriz Esquivel, claiming

18   they "show no understanding regarding what the case is about or what their responsibilities are as

19   class representatives." (Opp. at 30:1-3).

20   Legal sophistication and intimate knowledge of the case or the discovery is not necessary

21   to serve as a class representative. *Surowitz v. Hilton Hotels Corp.*, (1966) 383 U.S. 363, 373. In

22   *Surowitz*, the Supreme Court held that Mrs. Surowitz, an elderly immigrant garment worker who

23   spoke little English and probably understood less about securities, could serve as the

24   representative plaintiff in a shareholder's derivative suit against the Board of Directors of the

25   Hilton Hotel chain.  Mrs. Surowitz knew virtually nothing about the case. *Id*. at 366.  In holding

26   that Mrs. Surowitz could serve as a class representative, the Court stated that the Federal Rules

27   were intended "in large part to get away from some of the old procedural booby traps which

28   common-law pleaders could set to prevent unsophisticated litigants from ever having their day in

1    court."  *Id*. at 363.

2        Here, Defendant cherry picks excerpts from a seven and a half-hour deposition of Plaintiff

3    Beatriz Esquivel and a six-hour deposition of her husband, Plaintiff Antonio Esquivel.  Although

4    they, like many class members, may not have been aware of the legal definition of the FHA lien

5    recorded against their home, they were keenly aware that they had agreed to a substantial debt

6    obligation (of $93,000) in exchange for modification of their loan. (Declaration of Noah Zinner in

7    Support of Plaintiffs' Reply to Defendant's Opposition to Motion for Class Certification ("Zinner

8    Decl."), Exhibit 1 at 69:20-24, 70:2-12).

9        Mr. and Mrs. Esquivel are litigants, not litigators. They, like the vast majority of people

10    without a legal degree, rely on the advice of qualified class counsel in matters relating to the

11    prosecution of their case. That they are confused as to "when their loan was modified, if it was

12    modified, or if there was any delay at all" (Opp. at 30:4-5) is an entirely reasonable response to

13    their confounding treatment by Bank of America, which offered them a modification and then

14    treated them as if none existed and sought to foreclose on their home. Indeed, Bank of America's

15    objections to the Esquivels seem to be founded on the Plaintiffs' inability to understand Bank of

16    America's inexplicable treatment of them. For example:

17-18    "Q: [by counsel for Defendant] Is it correct that you did not understand that Bank of
America would report your loan as delinquent to credit reporting agencies until your loan was
brought fully current?

19-20-21    A: [by Mrs. Esquivel] What I don't understand is why they reported me as delinquent if
we had done the modification, and we had kept making the payments as they had asked, until the
bank sent us a letter saying that the payments we had—it was less than what should have been
paid. And it was then that we started to worry because the bank returned the checks to us."

22-23    Q: [by counsel for Defendant] I'm going to ask again because I didn't hear an answer to
the question. Did you understand that if your loan was delinquent, Bank of America would
continue to report your loan as delinquent to credit reporting agencies until your loan was brought
fully current?

24-25    A: [by Mrs. Esquivel] Well, how could I understand if I was making my payments that the
bank asked me to make?"

26    (Zinner Decl., Ex. 1 at 71:24-25, 72:1-20; *see also id*. at 72:23-25, 73:1-20.

27        Defendant also states that Plaintiffs "admit" that Mr. Esquivel "isn't capable of serving as

28    a class representative because of his health and memory problems." Plaintiffs made no such

1   admission. Mr. Esquivel is 74 years old, and his health has deteriorated since the inception of this

2   action. If he reaches a point when he is no longer able or willing to participate as a litigant due to

3   his health, he will withdraw and his wife Beatriz will continue to represent the interests of the

4   class. Until then, he desires and intends to represent the class to the extent that his body and

5   abilities allow. (Zinner Decl., Ex. 2 at 126:6-24, 127:19-25, 128:1-4. Simply put, Mr. Esquivel

6   cannot bar Mr. Esquivel from bringing this action on behalf of himself and others similarly

7   situated merely because he suffers from medical issues common to people of his age. *Parrish v.*

8   *NFL Players Ass'n & NFL Players Inc*., 2008 U.S. Dist. LEXIS 120158, *21 (N.D. Cal. Apr. 29,

9   2008) ("[Class representative] Adderley's testimony only shows that he was confused and

10  probably thrown off by the rigor of a deposition. In light of his age and unfamiliarity with the

11  legal process, Adderley's responses are not alarming. It would be unfair to deny someone in

12  Adderley's position access to our courts merely because he is unable to articulately respond to

13  questions from attorneys.").

14          6.      **The Proposed Class Meets the Requirements of Rule 23(b)(3) Because
                    Common Issues Predominate and a Class Action Is Superior to Other
15                  Available Methods for Fairly and Efficiently Adjudicating the
                    Controversy.**
16

17          Defendant also attempts to prevent certification by claiming that class issues do not

18  predominate.  However, this argument mischaracterizes Plaintiffs' position and misstates the law.

19          Defendant contends that class issues cannot "predominate" because of damage claims,

20  asserting that individual damage issues will create confusion and lead to thousands of mini-trials.

21  This is not the case.

22          First, the class may be certified as a statutory damages class without a showing of any

23  actual damages. *See Gonzales*, 660 F.3d at 1067 ("Statutory damages under the FDCPA are

24  intended to 'deter violations by imposing a cost on the defendant even if his misconduct imposed

25  no cost on the plaintiff.'"); *see also Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402

26  (E.D. Pa. 2010) (approving class action settlement for statutory and punitive damages related to

27  unfair credit reporting, leaving claims for actual damages even for those who did not opt out).

28          Further, The Ninth Circuit recently reiterated that the "amount of damages is invariably an

1   individual question and does not defeat class action treatment." *Leyva v. Medline Indus.*, 716 F.3d

2   510, 514 (9th Cir. Cal. 2013), quoting *Blackie v. Barrack*, 524 F. 2d 891, 905 (9th Cir. 1975); see

3   also *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2558 (2011) ("individualized monetary

4   claims belong in Rule 23(b)(3)").

5         In *Leyva*, decided after the Supreme Court's opinion in *Comcast Corp. v. Behrend*, 133 S.

6   Ct. 1426, 1428 (U.S. 2013), the District Court had found that predominance was lacking because

7   "evaluating each putative class member's claims would require fact-specific, individualized

8   inquiries." *Leyva* 716 F.3d at 513. The Ninth Circuit reversed, holding that the District Court

9   "applied the wrong legal standard and abused its discretion." *Leyva* cautions that manageability

10  (and superiority) concerns must be weighed against the impracticality of "other means for

11  putative class members to adjudicate their claims." *Id*. at 515.

12        Damages in the case at bar may be calculated on a statutory basis and/or through a claims

13  process to determine whether the Bank's failure to implement FHA HAMP modifications resulted

14  in additional charges to borrowers' accounts. Courts routinely certify class actions with respect to

15  common issues where it is necessary to determine class member damages through a distinct

16  process. *Frlekin v. Apple Inc*., 2015 U.S. Dist. LEXIS 92768, *26 (N.D. Cal. July 16, 2015)

17  (holding that "After *Comcast*, our court of appeals distinguished that decision and held that "the

18  presence of individualized damages cannot, by itself, defeat class certification under Rule

19  23(b)(3) and that "[defendant] should not be allowed to prevent class certification due to a record-

20  keeping problem of its own making"); *see also Taylor v. FedEx Freight, Inc.*, 2015 U.S. Dist.

21  LEXIS 64177, *38 (E.D. Cal. May 15, 2015), *adopted by Taylor v. FedEx Freight, Inc*., 2015

22  U.S. Dist. LEXIS 97706 (E.D. Cal., July 24, 2015).

23        With regard to emotional distress claims, Plaintiffs bring them only individually and not

24  on a class-wide basis. Plaintiffs reserve their rights to such relief in an individual action should

25  certification be denied, but as the First Amended Complaints Prayer for Relief makes clear, they

26  make no such demand for relief on behalf of the class or as representatives of the class.

27        III.      **CONCLUSION**

28        For these reasons, the Motion should be granted.

DATED:  September 4, 2015                    Respectfully submitted,

HOUSING AND ECONOMIC RIGHTS
ADVOCATES

By:  _/s/ Noah Zinner_____
      Noah Zinner
      Attorney for Plaintiffs

N:\Docs\1189-01\UD Case\UD Caption.DOC

**CERTIFICATE OF SERVICE**

I am employed in Oakland, California.  I am over the age of 18 and not a party to this action.

My business address is 1814 Franklin Street, Oakland, CA 94612.  I hereby certify that I served the

following documents on the below persons through the ECF system for this Court pursuant to L.R.

135 and Fed. R. Civ. P.5:

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION: DECLARATION OF NOAH ZINNER ISO PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION**

Alyssa Sussman
*asussman@goodwinprocter.com*
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
Tel: 212.813.8800
Fax: 212.355.3333

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 4, 2015 in Oakland, California.

HOUSING AND ECONOMIC RIGHTS ADVOCATES

By: */s/ Noah Zinner*

NOAH ZINNER