UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO ESQUIVEL and BEATRIZ ESQUIVEL, individually, on behalf of all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; and Does 1 through 10, inclusive,<br><br>Defendants. | No. 2:12-cv-02502-GEB-KJN<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

Plaintiffs seek class certification under Federal Rules of Civil Procedure ("Rules") 23(a) and 23(b)(3) of the following class: "All California residential mortgage loan borrowers who, since August 15, 2009, signed and returned Bank of America's offer of a permanent FHA HAMP modification [agreement] where Bank of America recorded a lien in favor of the Secretary of Housing and Urban Development pursuant to the modification [agreement]." (Pls.' Mem. of P. & A. in Supp. of Mot. for Class Certification ("Class Mot.") 7:13-16, ECF No. 83.) Defendants oppose the motion, arguing:

> Plaintiffs Antonio and Beatriz Esquivel defaulted on their mortgage loan and received a permanent loan modification from Bank of America under the Federal Housing Administration's Home Affordable Modification

1

> Program ("FHA-HAMP").  They complain that Bank of America took too long to implement their modification, and therefore seek to certify a class of borrowers on the theory that Bank of America took too long to implement everybody's modification.  That putative class is defined to include every borrower who signed and returned an FHA-HAMP permanent-modification agreement — without regard to how long it took Bank of America to modify their loans.  Plaintiffs do not support their motion with any evidence that every other borrower (or any other borrower) had to wait too long for their modification. Plaintiffs simply ask this Court to assume that however long it took, it was too long, and constituted a breach of Bank of America's contractual obligations and a violation of various California statutes.

(Defs.' Opp'n to Class Mot. ("Opp'n") 1: 1-11, ECF No. 88.)

## I.   BACKGROUND

Plaintiffs argue they "fell behind on their mortgage payments and applied to Bank of America for an affordable loan modification" in order to avoid defaulting on their loan; "[a]fter . . . successful[] complet[ion of] Bank of America's application process and a three-month Temporary Payment Plan, the Bank offered Plaintiffs a permanent FHA HAMP [affordable loan] modification via [an offer letter]." (Class Mot. 4:4-9.) Plaintiffs contend this offer constitutes "a legally binding offer of a permanent loan modification to each FHA loan borrower, provided only that the borrower [provides a notarized signature] and return[s or returned] the commitment letter, modification agreement, and subordinate note." (Id. 10:16-18.) Plaintiffs contend "a class-wide common issue [exists] that [Plaintiff construes] Bank of America['s offer letter as] . . . a legally binding offer, [that] the members of the class accepted." (Id. 11:4-7.)

1    Bank of America responds to Plaintiffs contention that

2  each modification agreement is binding upon an offeree's

3  acceptance, as follows:

4         The discovery record shows a number of
          material terms that appear in some loan-
5         modification agreements but not in others,
          even within the universe of FHA-HAMP
6         agreements. For example:

7         • Some of the agreements provide that
            "[t]he Loan Documents will not be
8           modified unless and until (1) Lender
            approves this Agreement and (2) the
9           Modification Effective Date . . . has
            occurred." E.g., Ex. 15 at 687060. Other
10          agreements, in contrast, omit the first
            condition . . .
11
          • Some of the agreements provide that
12          "[t]he Loan Documents will not be
            modified unless and until the
13          modification is approved by the
            Bankruptcy Court in my bankruptcy case."
14          E.G., Ex. 15 at 687061 . . .

15        • Some but not all of the agreements
            require the borrower to obtain flood
16          insurance as a condition of the
            modification. E.g., Ex. 14 at 677149.
17
          • Some but not all of the agreements
18          require the borrower to warrant that
            "[t]he property currently has no
19          materially adverse physical
            condition(s)." E.g., ex. 15 at 687060.
20
          • Some but not all of the agreements
21          require the borrower to warrant that "I
            do not have any other FHA-insured
22          mortgage." Id.

23        • Some but not all of the agreements
            require the borrower to warrant that I
24          currently have sufficient income to
            support the financial obligations under
25          the Loan Documents as modified by this
            Agreement.
26

27  (Id. 15:18-16:13)

28        Bank of America further responds that "[each form

3

1   included] a number of additional conditions that bear on whether

2   a valid modification agreement exists". (Id. 16:14-17.) Bank of

3   America contends: "[d]etermining whether any given borrower has a

4   valid loan-modification agreement . . . and whether [Bank of

5   America] has an obligation under that agreement to modify the

6   borrower's loan, cannot be decided without determining whether

7   each of these conditions has been satisfied." (Id. 17:23-25.)

8   Bank of America asserts the referenced conditions include an

9   offeree's obligation to "cooperate fully with the Lender" in

10  obtaining documents and in "execut[ing] such other documents as

11  may be necessary." (Id. 17:12-20.)

12          Plaintiffs argue because "the class is defined as

13  borrowers against whose homes Bank of America recorded a

14  subordinate HUD lien . . . [t]he recordation of HUD liens

15  establishes that all members of the Class either met [the

16  specified contingencies], or the bank waived them." (Class Mot.

17  11:9-14.)

18          Bank of America counters:

19          Nowhere . . . does HUD intimate . . . any
            requirement that the servicer complete its
20          determination of the borrower's eligibility
            for the permanent modification within the
21          [time period required for recordation] . . .
            Plainly following HUD's recording rules
22          cannot possibly mean that all borrowers 'met'
            all necessary contingencies in every case.
23          Nor is there any basis in the law for
            Plaintiffs' contention that following HUD's
24          recording rules operated as a 'waive[r]' of
            the condition.
25

26  (Opp'n 24:9-23.)

27          Plaintiffs contend Bank of America breached the loan

28  modification agreement by failing to timely implement the terms

1   of the modification agreement, and that since such breaches are

2   systematic occurrences their motion should be granted. (Class

3   Mot. 1:1-6.) Plaintiffs essentially argue that Bank of America

4   fails to treat each agreement as binding until the terms of the

5   agreement are input into its servicing system, even though the

6   effective date of each agreement is when it is or was executed.

7   (1:23-28.) Plaintiffs argue that "[w]hile th[e Bank's] process

8   [of closing the modification] is going on, Bank of America

9   continues to seek to collect the unmodified loan payments from

10  the borrower" and to report any delinquency to credit reporting

11  agencies. (Class Mot. 6:20-25.) Plaintiffs also argue: "Only at

12  the conclusion of this process will Bank of America's automated

13  credit reporting system report the borrower's loan correctly

14  under the terms of the modification . . . ." (Id. 7:1-5.)

15          Bank of America rejoins its goal "is to implement the

16  modified loan terms retroactive to 'the time of [the

17  modification] offer'[,]" but "[i]n some cases . . . the Bank must

18  collect the required funds or take other steps to remedy the

19  issue preventing the modification from going through." (Opp'n

20  5:20-22.) Bank of America argues:

21          Depending on . . . individual circumstances,
            the issue might be remedied quickly and the
22          modification implemented shortly after the []
            lien is recorded; or the issue might take
23          some time to remedy and the modification
            takes longer to implement; or the issue may
24          not be remediable and Bank of America must
            release the lien . . . Conversely, there are
25          cases where loan modifications are
            implemented long *before* the lien is recorded.

26

27  (Id. 5:26-6:3.)

28          Bank of America further argues:

                                5

1
2
3
4
5

> Half the borrowers who received FHA-HAMP modifications had them implemented within two days of the recording of the HUD lien. Ex. 1 ¶ 14. Four out of five borrowers had them implemented within a month of recording. Id. ¶ 15. There are outliers such as the Plaintiffs whose modifications take longer for reasons that cannot be discerned without consulting their individual loan files.

6

(Id. 9: 15-19.)

7

8       Plaintiffs allege in their Complaint that the Bank's

9    delay in implementing the terms of the FHA-HAMP modifications,

10   whilst continuing to collect unmodified loan payments, and

11   reporting any payment delinquencies to credit reporting agencies,

12   constitutes a breach of contract, and violates the following

13   California laws: the Consumer Reporting Agencies Act (Cal. Civ.

14   Code §§1785, et seq., "CRAA"), the Rosenthal Fair Debt Collection

15   Practices Act (Cal. Civ. Code §§1788, et seq., "the Rosenthal

16   Act"), and the Unfair Competition statute (Cal. Bus. & Prof. Code

17   §17200, "UCL").

## II.   DISCUSSION

18
### A.   Class Certification

19       Class certification is governed by Rule 23. "Parties

20   seeking class certification bear the burden of demonstrating that

21   they have met each of the four requirements of [Rule] 23(a) and

22   at least one of the requirements of Rule 23(b)." Ellis v. Costco

23   Wholesale Corp., 657 F.3d 970 (9th Cir. 2011) (citing Zinser v.

24   Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir.),

25   amended by 273 F.3d 1266 (9th Cir. 2001)).

26       Under Rule 23(a), the party seeking certification must

27   establish:

28

1

> (1) the class is so numerous that joinder of all members is impracticable,

2

> (2) there are questions of law or fact common to the class,

3

4

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

5

6

> (4) the representative parties will fairly and adequately protect the interests of the class"

7

8

Fed. R. Civ. P. 23(a)(paragraph breaks added).

9

Plaintiffs rely solely on Rule 23(b)(3) of the Rule

10

23(b) requirements. Under Rule 23(b)(3),

11

> Class action may be maintained if Rule 23(a)

12

> is satisfied **and** if: (3) the court finds that the questions of law or fact common to class

13

> members predominate over any questions affecting only individual members, and that a

14

> class action is superior to other available methods for fairly and efficiently

15

> adjudicating the controversy . . .

16

Fed. R. Civ. P. 23(b)(3) (emphasis added).

17

### 1. Predominance

18

"Plaintiffs have not met their burden of showing that

19

common questions predominate, which is fatal to class

20

certification under Rule 23(b)(3) [; therefore,] the Court does

21

not address the threshold requirements of Rule 23(a) or the Rule

22

23(b)(3) requirement of superiority." Moua v. Jani-King of Minn.

23

Inc., No. 08-4942 ADM/JSM, 2010 WL 93578, at *2 (D.Minn. Mar. 12,

24

2010)(citing Steering Comm. V. Exxon Mobile Corp., 461 F.3d 598,

25

601, 604 (5th Cir. 2006)); see also Edwards v. Ford Motor Corp.,

26

No. 11-CV-1058-MMA(BLMJ), 2012 WL 2866424, at *2, 4-11 (S.D. Cal.

27

June 12, 2012)(declining to address other elements relevant to

28

class certification when predominance under Rule 23(b)(3) is not

1    met).

2            Plaintiffs argue "predominance is satisfied as to each

3    claim because Bank of America's class-wide liability turns on the

4    uniform . . . [o]ffer [l]etters and modification agreements, and

5    the Bank's uniform reporting and collection practices after

6    receiving those documents . . ." (Class Mot. 13:8-12.)

7    Specifically Plaintiffs argue: "The FHA-HAMP compliance and title

8    'contingencies' are minor issues on a class wide basis because

9    all class members had HUD liens recorded against their homes."

10   (Id. 13:15-17.)

11           Plaintiffs contend that "it is well recognized that

12   individual issues, such as damages calculations do not preclude

13   class certification." (Id. 14:1-2.) Further, Plaintiffs argue

14   that common issues predominate for the CCRA claims (Id. 14:14-

15   24); Rosenthal Act claims (Id. 14:25-15:14); and UCL claims (Id.

16   15:15-16:1).

17           Defendants rejoin:

18           The individual questions that predominate
             here include: Did each borrower properly
19           accept the offer? Was a contract formed? What
             conditions did the contract place on
20           performance? Did the borrower satisfy them?
             Did Bank of America perform its obligations
21           under the contract in a timely fashion? If
             not, was the borrower damaged by the delay—
22           and if so, how?

23   (Opp'n 31:8-12.)

24           Defendants further rejoin that "each putative class

25   member's damages claim would need to be considered and analyzed

26   separately, without any reference to a common formula or other

27   common approach." (Id. 32:4-6.)

28           Plaintiffs reply that the class may be certified as a

                                    8

1  statutory damages class without a showing of any actual damages.

2  (Pl.'s Reply to Defs.' Opp'n to Mot. for Class Cert. ("Reply")

3  19:22-23, ECF No. 89.) Further, Plaintiffs reply: "Courts

4  routinely certify class actions with respect to common issues

5  where it is necessary to determine class member damages through a

6  distinct process." (Reply 20:14-16.)

7         Defendants have demonstrated that any common issue that

8  Plaintiffs allege would not predominate over individualized

9  questions. First, the Court would have to conduct separate

10 evidentiary hearings to determine whether each FHA-HAMP loan

11 modification contract's conditions were satisfied. See Campion v.

12 Old Republic Home Prot. Co., 272 F.R.D. 517, 530 (S.D. Cal. 2011)

13 (finding that Rule 23(b)(3)'s predominance requirement was not

14 met where "an individual inquiry into the handling of each class

15 member's claim would be necessary to determine whether a breach

16 occurred"). Second, Plaintiffs have not demonstrated that

17 "damages are capable of measurement on a classwide basis." See

18 Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1433 (2012) (holding

19 that a plaintiff seeking class certification bears the burden of

20 "establishing that damages are capable of measurement on a

21 classwide basis.")

22         Therefore, Plaintiffs have failed to establish Rule

23 23(b)(3) predominance and Plaintiff's motion for class

24 certification is DENIED.

25 Dated:  January 6, 2016

26

27 _____

28 GARLAND E. BURRELL, JR.
   Senior United States District Judge

9